Susanne M. WELDON–FRANCKE and Normandin Cheney & O'Neil, PLLC, Appellants

v.

Seymour FISHER and Carmen Fisher, Appellees.

No. 14–06–00834–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 11, 2007.

Kevin F. Risley, Houston, Alison H. Moore, Elaine T. Lenahan, Dallas, Stretch R. Lewis, Galveston, TX, for appellants.

John H. Campbell, Galveston, TX, for appellees.

Panel consists of Justices FROST, SEYMORE, and GUZMAN.

## OPINION

KEM THOMPSON FROST, Justice.

A nonresident attorney and her nonresident law firm bring this interlocutory appeal from the trial court's order denying their joint special appearance in a lawsuit filed against them by clients living in Texas. We reverse the trial court's order and remand with instructions to the trial court

to dismiss the claims against both defendants for lack of personal jurisdiction.

## I. Factual and Procedural Background

Appellant Susanne M. Weldon–Francke is a New Hampshire attorney. She resides in New Hampshire and practices law in Laconia, New Hampshire with appellant Normandin Cheney & O'Neil, PLLC, a New Hampshire law firm (the "Law Firm"). Appellees Seymour and Carmen Fisher are Texas residents who, at the time of the events made the subject of their claims, owned a second home in New Hampshire.

In conducting a personal-jurisdiction analysis, we review the claims in question and the evidence regarding the jurisdictional facts, but we do not adjudicate the merits of the claims. *Bougie v. Technical Risks, Inc.*, No. 14–03–01222–CV, 2004 WL 2902508, at *5 (Tex.App.-Houston [14th Dist.] Dec. 16, 2004, no pet.) (mem.op.). Ultimate liability in tort is not a jurisdictional fact, and the merits of the Fishers' claims are not at issue in determining whether the trial court erred in concluding that it could exercise personal jurisdiction over Weldon–Francke and the Law Firm (collectively "Lawyers"). *See id.*

In their live petition in the trial court, the Fishers make the following allegations:

- On or about August 5, 1998, the Fishers sought legal advice from Weldon–Francke. The Fishers were concerned about their potential federal estate tax liability. They sought legal and tax advice regarding a possible transfer of their New Hampshire home to their two sons. The Fishers retained the services of the Lawyers.
- Weldon–Francke was made aware that the Fishers were Texas residents.
- After discussing the Fishers' desires and examining documents, Weldon–Francke prepared a trust document entitled the "Fisher Realty Trust." Weldon–Francke also prepared the deed by which title to the Fishers' New Hampshire home would be transferred to the trust. The beneficiaries of the trust were the Fishers and their two sons.
- Weldon–Francke gave the Fishers legal advice concerning the trust and their New Hampshire home. The Lawyers charged the Fishers for the legal services provided, and the Fishers paid these fees.
- The Lawyers gave the Fishers erroneous legal advice and failed to achieve their stated goal of minimizing estate tax liability, and the Lawyers are liable for negligence, negligence per se, and breach of fiduciary duty.
- Weldon–Francke breached her fiduciary duty (1) by not disclosing to the Fishers that the legal advice she had given them was flawed and (2) by sending them a December 2, 2005 letter in which she asserted that the trust did achieve the goal of avoiding federal estate taxes. The Fishers did not solicit the opinions contained in this letter.
- The Fishers and their Texas counsel made written inquiry to Weldon–Francke, requesting an explanation of her December 2, 2005 letter. Weldon–Francke further breached her fiduciary duty by failing to admit that she had erred years earlier and by trying to obscure her alleged acts of malpractice in two more phone conversations and in a second letter to the Fishers dated February 9, 2005. The two letters constitute negligent or intentional misrepresentations that proximately caused the Fishers damages.

In April 2006, the Fishers filed suit against the Lawyers in the trial court be-

low. The Lawyers filed a joint special appearance contesting personal jurisdiction. The trial court denied the joint special appearance. The Lawyers now challenge the trial court's ruling on personal jurisdiction.

## II. STANDARD OF REVIEW

Whether the Lawyers are subject to personal jurisdiction in Texas is a question of law subject to de novo review. *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). The trial court did not issue any findings of fact or conclusions of law. Therefore, all facts necessary to support the trial court's ruling and supported by the evidence are implied in favor of the trial court's decision. *Id.* at 795. Parties can challenge the legal and factual sufficiency of these implied factual findings. *Id.* In conducting a no-evidence analysis, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *See City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the sole judge of the credibility of the witnesses and the weight of their testimony. *See id.* at 819.

## III. ISSUES AND ANALYSIS

In three related issues, the Lawyers challenge the trial court's implied findings of specific and general jurisdiction and its denial of the joint special appearance. More specifically, the Lawyers contend

that the evidence is legally insufficient to support the trial court's implied findings of specific jurisdiction and general jurisdiction.[1] Finally, they contend that exercising personal jurisdiction over them in a Texas court would offend traditional notions of fair play and substantial justice.

The Texas long-arm statute governs a Texas court's exercise of jurisdiction over nonresident defendants. TEX. CIV. PRAC. & REM.CODE ANN. §§ 17.041–.045 (Vernon Supp.2005). It allows a court to exercise personal jurisdiction as far as the federal constitutional requirements of due process will permit. *See BMC Software,* 83 S.W.3d at 795. Personal jurisdiction over a nonresident defendant is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state and (2) the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Id.* For a defendant to have sufficient contacts with the forum, it is essential that there be some act by which the defendant "purposefully avails" itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws. *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex.2005). Although not determinative, foreseeability is an important consideration in deciding whether the nonresident defendant purposefully has established minimum contacts with Texas. *BMC Software,* 83 S.W.3d at 795. The concept of foreseeability is implicit in the requirement that there be a substantial connection between the defendants and Texas arising from their conduct purposefully directed toward Texas. *See Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 227

---

1. We construe the Lawyers' brief as adequately attacking the legal sufficiency of the trial court's implied findings.

(Tex.1991). A defendant should not be subject to a Texas court's jurisdiction based upon random, fortuitous, or attenuated contacts. *BMC Software*, 83 S.W.3d at 795.

■■ Specific jurisdiction exists when the claims in question arise from or relate to the defendant's purposeful contacts with Texas. *Am. Type Culture Collection Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex.2002). In conducting a specific-jurisdiction analysis, we focus on the relationship among the defendants, Texas, and the litigation. *See Guardian Royal*, 815 S.W.2d at 228. For a nonresident defendant's contacts with Texas to support an exercise of specific jurisdiction, there must be a substantial connection between the defendant's purposeful contacts with Texas and the operative facts of the litigation. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex.2007).

■ General jurisdiction is established if the defendant has continuous and systematic contacts with the forum, whether or not the defendant's alleged liability arises from those contacts. *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 166-67 (Tex. Aug.31, 2007). A general-jurisdiction inquiry is very different from a specific jurisdiction inquiry and involves a more demanding minimum-contacts analysis, with a substantially higher threshold. *Id.* at 168. Usually, the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services, or maintaining one or more offices there. *Id.* Activities that are less extensive than that will not qualify for general jurisdiction. *Id.* Courts analyze general jurisdiction without regard to the nature of the claims alleged. *Id.* As an analytical device to insure that any related forum activities are not improperly infiltrating the dispute-blind inquiry into general jurisdiction, courts should consider a

hypothetical claim that has no connection to Texas and ask if the defendant's purposeful contacts with Texas are so pervasive and extensive that they are sufficient to support personal jurisdiction as to such a claim. *Id.* In conducting a general-jurisdiction analysis, we are concerned with the quality rather than the quantity of the contacts. *See Am. Type Culture Collection Inc.*, 83 S.W.3d at 809-10. In assessing the quality of the contacts, we do not view each contact in isolation; rather, we must carefully investigate, compile, sort, and analyze all contacts to determine if together they are sufficient to support general jurisdiction. *See id.* at 809. For this reason, a general-jurisdiction inquiry can be tedious. *See PHC–Minden*, 235 S.W.3d at 170.

## A. Did the trial court err in concluding that it could exercise personal jurisdiction over the Lawyers based on specific jurisdiction?

In support of their joint special appearance, the Lawyers submitted an amended affidavit in which Weldon–Francke testified in pertinent part:

* Weldon–Francke is not licensed to practice law in Texas. Her primary area of practice and concentration is estate planning and probate. She is a partner and member of the Law Firm. The Law Firm has one office, which is located in Laconia, New Hampshire.

* On July 9, 1998, Weldon–Francke received a telephone message from Seymour Fisher stating that he would like to have a trust created. Weldon–Francke returned the phone call to a New Hampshire telephone number.

* On July 13, 1998, Weldon–Francke met with the Fishers in her law office in New Hampshire to discuss legal matters relating to the Fishers' sum-

mer home, which is located in Sanbornton, New Hampshire.

- On or about July 14, 1998, Weldon–Francke drafted the trust instrument and schedule of beneficiaries. In addition, Weldon–Francke requested title work and ordered an appraisal of the Fishers' Sanbornton residence.
- On July 28, 1998, Weldon–Francke reviewed the appraisal report. On July 29, 1998, Weldon–Francke reviewed the title report. On July 31, 1998, she revised the trust instrument and schedule of beneficiaries. On the same day, she sent a draft of the trust instrument to the Fishers at a New Hampshire address.
- On August 5, 1998, Weldon–Francke again met with the Fishers at her law office in New Hampshire, and they executed the deed and the trust instrument.
- On August 6, 1998, the Law Firm sent the Fishers an invoice for fees and expense in the amount of $1,088. The invoice was mailed to the Fishers at a New Hampshire address. On August 11, 1998, the recorded trust instrument and the recorded deed were mailed to the Fishers at a New Hampshire address.
- Because the Fishers had not previously paid their bill in full, a supplemental invoice was sent to them on September 23, 1998, at a New Hampshire address.
- From the fall of 1998 to the fall of 2003, the Lawyers had no further contact with the Fishers. In September 2003, the Fishers placed telephone calls to the Law Firm with questions about the *Fisher Realty Trust*. According to Weldon–Francke's notes, the Fishers placed the phone calls from their Sanbornton residence. In November 2005, Seymour Fisher spoke with Weldon–Francke's assis-

tant and requested that a copy of the trust document be sent to the Fishers' address in Texas.

- On December 2, 2005, Seymour Fisher telephoned Weldon–Francke to inquire as to the identification of the trust property in the trust document. Weldon–Francke reminded him that there was a separate, recorded deed and Weldon–Francke mailed him another copy of the deed. Weldon–Francke received an email from Seymour Fisher several days later thanking her for sending the deed.
- On January 5, 2006, Weldon–Francke received a facsimile from the Fishers' Texas counsel posing a number of questions about the trust. On January 9, 2006, Weldon–Francke requested authorization from the Fishers to discuss any matters pertaining to the trust with their Texas counsel.
- Approximately one week later, Weldon–Francke received authorization from the Fishers to discuss the trust and matters related thereto with their Texas counsel. On January 24, 2006, Weldon–Francke spoke on the telephone with the Fishers' Texas counsel regarding the trust.
- Weldon–Francke sent to the Fishers' Texas counsel by facsimile a letter dated February 9, 2006, in response to his letter of January 5, 2006.
- The creation of the trust took less than two months during July and August 1998.
- Weldon–Francke has never been to Texas. She has never advertised in Texas or engaged in any affirmative actions to promote business in Texas. She has never represented any Texas residents in litigation or transactions in Texas. She never had any contact with the Fishers in Texas during the time period relevant to the creation of the trust.

Attached to Weldon–Francke's affidavit are copies of (1) the trust document, (2) invoices and a letter sent to the Fishers at a New Hampshire address, (3) the January 3, 2006 letter from the Fishers' Texas counsel to Weldon–Francke listing thirteen questions relating to the trust, and (4) Weldon–Francke's letters of December 2, 2005 and February 9, 2006, which were sent to the Fishers in Texas.

In response to the special appearance, the Fishers submitted an affidavit from Seymour Fisher in which he testified to the truth of most of the allegations of the Fishers' petition (summarized above). Seymour Fisher also added that he had called Weldon–Francke's office in December 2005, requesting certain documents. He stated that, in response to this request, Weldon–Francke sent the requested documents along with her one-page letter dated December 2, 2005. The Fishers also submitted an affidavit from the attorney representing them in this case. As relevant to the specific-jurisdiction analysis, the Fishers' attorney testified as follows:

- He reviewed all of the documents regarding the creation of the trust and the transfer of title to the trust. He also reviewed Weldon–Francke's December 2, 2005 letter.
- He wrote a letter to Weldon–Francke requesting that she provide the legal and tax analysis that supported the transaction.
- In a subsequent telephone conversation, Weldon–Francke asserted that she had handled the transaction properly and that her analysis had been sound. In her subsequent letter to the Fishers in Galveston, Texas, Weldon–Francke again defended the manner in which the transaction was handled.

■ Although there are conflicts in the evidence regarding the liability issues, there is no conflict in the evidence regarding the specific-jurisdiction issue. While in New Hampshire in 1998, the Fishers retained the services of a New Hampshire lawyer, who is a partner in a New Hampshire law firm. Under this representation, the New Hampshire lawyer drafted documents creating a New Hampshire trust and transferring title to the Fishers' New Hampshire home to that trust. The Fishers signed these documents in New Hampshire. The New Hampshire lawyer sent invoices to the Fishers at a New Hampshire address, and the Fishers sent payment of these invoices to the New Hampshire law firm's New Hampshire address. This transaction was consummated in New Hampshire in 1998, and all of the Lawyers' contacts with the Fishers during this period occurred in New Hampshire. Five years later, the Fishers called the Law Firm from their New Hampshire home with questions about the trust. Two years after these calls, Seymour Fisher called Weldon–Francke's office to request certain documents. In response to this request, Weldon–Francke sent the requested documents along with a one-page letter to the Fishers in Texas. In this letter, Weldon–Francke describes her understanding of the 1998 transaction effected during her representation of the Fishers. A month later, in January 2006, the Fishers' Texas counsel sent a letter to Weldon–Francke propounding thirteen questions regarding the trust. In response, Weldon–Francke spoke with the Fishers' Texas counsel on the phone and then sent a letter to him responding to these questions.

The Fishers assert that Weldon–Francke knew that they were Texas residents. However, contracting with and accepting payment from Texas residents for services performed in New Hampshire is insufficient to support specific jurisdiction. *See IRA Resources, Inc. v. Griego,* 221 S.W.3d 592, 597–98 (Tex.2007).

The Fishers also argue that specific jurisdiction is proper because their claims arise out of or relate to (1) the phone calls in 2005 and 2006 between Weldon–Francke in New Hampshire and the Fishers and their counsel in Texas and (2) the two letters that Weldon–Francke sent to Texas, which the Fishers refer to as "opinion letters." The Fishers claim that specific jurisdiction is also appropriate because the Lawyers have purposefully performed alleged tortious acts in Texas (the telephone calls and the two "opinion letters"). Presuming for the sake of argument that these telephone calls and letters contain erroneous legal opinions, the undisputed evidence shows that Weldon–Francke engaged in these telephone calls and sent these letters to answer questions and respond to requests from the Fishers and their Texas counsel regarding her 1998 legal services. This legal work involved no purposeful contacts by the Lawyers with Texas. Presuming, without deciding, that Weldon–Francke had an attorney-client relationship with the Fishers when she participated in these telephone calls and sent these letters, she was not being paid by the Fishers for this work, and she was not engaging in any new representation. Rather, she was answering questions and sending documents relating to the 1998 legal work. The undisputed jurisdictional evidence in this case shows that the Fishers' claims do not arise from or relate to the Lawyers' purposeful contacts with Texas. See Michiana Easy Livin' Country, Inc., 168 S.W.3d at 791–94 (holding that there was no specific jurisdiction as to tort claims allegedly arising out of statements made in telephone call between nonresident and Texas resident because nonresident did not purposefully direct its marketing efforts at Texas and the prod-

uct about which the statements were made was the only product the defendant had sold to a Texas resident); Bergenholtz v. Cannata, 200 S.W.3d 287, 293–97 (Tex. App.-Dallas 2006, no pet.) (concluding that trial court correctly determined that it lacked personal jurisdiction over California lawyers who represented Texas clients in a California lawsuit and who communicated with the Texas clients about the representation but did not seek out clients in Texas); see also Klenk v. Bustamante, 993 S.W.2d 677, 682 (Tex.App.-San Antonio 1998, no pet.) (holding that out-of-state attorneys' long-distance communications with their alleged Texas client, without evidence that the attorneys sought clients or otherwise affirmatively promoted their business in Texas, was insufficient level of purposeful contacts with Texas to support specific jurisdiction), disapproved of on other grounds by BMC Software Belgium, N.V., 83 S.W.3d at 794.

Though the Fishers allege tort claims based on these phone calls and letters, the allegation of a tort is not sufficient to overcome the Lawyers' lack of purposeful contacts. See Michiana Easy Livin' Country, Inc., 168 S.W.3d at 788–92. Likewise, any alleged knowledge that the brunt of the alleged damages caused by the alleged torts would be felt by the Fishers in Texas is insufficient to support specific jurisdiction. See id. In addition, even presuming, without deciding, that Weldon–Francke committed torts in these telephone calls and letters, she would have committed these torts while gratuitously responding to inquiries regarding the 1998 legal services she provided in New Hampshire. These contacts would not be sufficient to satisfy the requirement that there be a substantial connection between the Lawyers' purposeful contacts with Texas and the operative facts of the litigation.[2]

2. In *Cartlidge v. Hernandez*, the defendant attorney had more contacts with Texas than do the Lawyers in this case. *See* 9 S.W.3d 341, 344–45 (Tex.App.-Houston [14th Dist.] 1999,

*See Moki Mac River Expeditions,* 221 S.W.3d at 585–88 (concluding that there was no specific jurisdiction based on the lack of a substantial connection between the defendant's purposeful contacts with Texas and the operative facts of the litigation).

Based upon the undisputed evidence, we conclude the evidence is legally insufficient to support the trial court's implied finding that it could exercise personal jurisdiction over the Lawyers based on specific jurisdiction. Accordingly, we sustain the Lawyers' first issue.

**B. Did the trial court err in concluding that it could exercise personal jurisdiction over the Lawyers based on general jurisdiction?**

General jurisdiction exists when a defendant has continuous and systematic contacts with Texas so that Texas courts may exercise personal jurisdiction over the defendant even if the plaintiff's claims did not arise from or relate to the defendant's activities purposefully directed to Texas. *See Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 414–16, 104 S.Ct. at 1872–73; *PHC–Minden, L.P.,* 235 S.W.3d at 167–68. In her amended affidavit, Weldon–Francke stated the following:

- Weldon–Francke has never been to Texas. She has never advertised in Texas or engaged in any affirmative actions to promote business in Texas. She has never represented any Texas residents in litigation or transactions in Texas. She is not licensed to practice law in Texas.
- Weldon–Francke does not maintain a place of business, office, or facility of any type in Texas, and she does not have any employees, servants, or agents in Texas. She does not own or rent real estate or personal property in Texas. She does not maintain any bank accounts, telephone numbers, or post office boxes in Texas.
- The 1998 trust matter is the only legal matter the Lawyers handled for the Fishers.
- The Law Firm maintains an internet website that can be accessed by the residents of Texas. This website provides general information about the firm and its attorneys, including the kinds of legal representation offered by the firm and its attorney members. The website includes recent articles and/or publications relating to the Law Firm's work, as well as contact information for the Law Firm and its members. The website does not allow for (1) the exchange of information between the user and the Law Firm or (2) the transaction of business or entry into contracts through the website or the internet.

A representative of the Law Firm testified to substantially the same facts as those stated above as to the Law Firm. He

no pet.). In addition, the *Cartlidge* court relied on *Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc.,* 835 S.W.2d 645 (Tex.App.-Houston [14th Dist.] 1992, no writ), of which the Supreme Court of Texas recently has disapproved. *See Michiana Easy Livin' Country, Inc.,* 168 S.W.3d at 791–92. Similarly, in *Tempest Broadcasting Corp. v. Imlay,* this court based its specific-jurisdiction analysis on *Memorial Hosp. Sys.* and *Ring Power Sys. v. Int'l de Comercio Y Consultoria, S.A.,* 39 S.W.3d 350 (Tex.App.-Houston [14th Dist.] 2001, no pet.), both of which have been disap-

proved by the Supreme Court of Texas. *See* 150 S.W.3d 861, 874–76 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *Michiana Easy Livin' Country, Inc.,* 168 S.W.3d at 791–92. In the case at hand, we must apply the analysis mandated by *Michiana* and *Moki Mac* rather than the analysis used in *Cartlidge* and *Tempest Broadcasting. Compare Moki Mac River Expeditions,* 221 S.W.3d at 585–88, *and Michiana Easy Livin' Country, Inc.,* 168 S.W.3d at 791–92, *with Tempest Broadcasting Corp.,* 150 S.W.3d at 874–76, *and Cartlidge* 9 S.W.3d at 344–45.

testified that the Law Firm is a New Hampshire corporation and that none of its attorneys reside in Texas or are licensed to practice law in Texas. The Fishers' counsel testified regarding the nature of the Law Firm's website and provided copies of some of the pages from that website; however, that testimony is consistent with Weldon–Francke's testimony.

Based upon the undisputed evidence, we conclude that the evidence is legally insufficient to support the trial court's implied finding that it could exercise general jurisdiction over the Lawyers. *See Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 416, 104 S.Ct. at 1873 (holding there was no general jurisdiction even though defendant sent its chief executive officer to Texas for a contract-negotiating session, accepted into its bank account checks drawn on a bank in Texas, purchased $4 million of goods and equipment from a company in Texas, and sent employees to Texas for training and technical consultation); *PHC–Minden, L.P.*, 235 S.W.3d at 170–71 (holding that isolated trips to Texas, more than $1,500,000 in purchases from Texas vendors, and two contracts with Texas entities were not substantial enough to support general jurisdiction); *CSR, Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex.1996) (concluding that there was no general jurisdiction and stating there must be an indication that defendant intended to serve the Texas market before personal jurisdiction can be found); *Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 671–82 (Tex.App.-Fort Worth 2001, no pet.) (holding record did not support general jurisdiction because it did not show that defendant created a general business presence in Texas through continuing and systematic activities). The Lawyers' purposeful contacts with Texas are not pervasive and extensive enough to allow Texas courts to exercise personal jurisdiction over a hypothetical claim against them that has no connection to Texas. *See PHC–Minden, L.P.*, 235 S.W.3d at 168–69.

▆▆▆▆ The only basis on which the Fishers assert general jurisdiction exists is the Law Firm's website. Internet contacts are evaluated on a "sliding scale." *See Experimental Aircraft Assoc., Inc. v. Doctor*, 76 S.W.3d 496, 506–07 (Tex.App.-Houston [14th Dist.] 2002, no pet.). At one end of the continuum, the website may support a finding of personal jurisdiction when a defendant does business over the internet by entering into contracts and through the repeated transmission of computer files. *See id.* At the other end of the continuum, personal jurisdiction cannot be based on the passive posting of information on the internet. *See id.* Courts evaluate the middle-ground contacts based on the level of interactivity and the commercial nature of the exchange of information.[3] The undisputed evidence shows that the Law Firm's website does not allow for (1) the exchange of information between the user and the Law Firm or (2) the transaction of business or entry into contracts through the website or the internet. Although they concede the website is at least in part passive in that it provides background and promotional information, the Fishers assert that the website nonetheless provides a basis for general jurisdiction because it (1) extols the Law Firm's professional experience in federal estate and gift taxation law and (2) publishes law articles that have been authored

3. The United States Court of Appeals for the Fifth Circuit has noted that this "sliding scale" test is not well-suited to the general jurisdiction inquiry. *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir.2002). Nevertheless, courts, including this one, have used it in a general-jurisdiction analysis to determine whether a defendant's website is a significant factor in support of jurisdiction. *See Experimental Aircraft Assoc., Inc.*, 76 S.W.3d at 506–07. Therefore, we follow this precedent.

by members of the Law Firm, without a disclaimer that visitors to the site are not entitled to rely on the advice so published or that the legal advice is limited to New Hampshire residents. However, these articles do not make the website interactive or change its informational nature. The undisputed evidence shows that the Law Firm's website is a passive, informational website. The evidence does not demonstrate that the Lawyers have continuous and systematic contacts with Texas.[4] *See Exito Elecs. Co. v. Trejo,* 166 S.W.3d 839, 858 (Tex.App.-Corpus Christi 2005, no pet.) (concluding that maintenance of non-interactive website by nonresident manufacturer was insufficient to prove general jurisdiction); *Hitachi Shin Din Cable, Ltd. v. Cain,* 106 S.W.3d 776, 786 (Tex.App.-Texarkana 2003, no pet.) (concluding that website had low level of interactivity and did not support general jurisdiction); *see also Mink v. AAAA Dev. LLC,* 190 F.3d 333, 336 (5th Cir.1999) (having contact information and product information alone on the internet is not sufficient to support personal jurisdiction in Texas). Accordingly, we sustain the Lawyers' second issue.

### IV. CONCLUSION

The trial court erred in impliedly finding that it could exercise personal jurisdiction over the Lawyers based on specific and general jurisdiction.[5] Because the trial court erred in denying the Lawyers' joint special appearance, we reverse the trial court's order and remand with instructions to the trial court to dismiss the claims against the Lawyers for lack of personal jurisdiction.

---

4. We note that, even if the website were on the opposite end of the sliding scale, research shows no Texas cases holding that general jurisdiction can be based on such a website alone, and some courts have found no general jurisdiction even though the defendant had such a website. *See, e.g., Double Eagle Resorts, Inc. v. Mott,* 216 S.W.3d 890, 896–98 (Tex.App.-Beaumont 2007, no pet.) (holding that a defendant's operation of a website that allows customers to make reservations does not, by itself, prove general jurisdiction); *Reiff v. Roy,* 115 S.W.3d 700, 705–06 (Tex. App.-Dallas 2003, pet. denied) (concluding that, even if website were interactive, provided directions, and allowed customers to make reservations at defendants' hotel, the website still would not prove general jurisdiction); *AmQuip Corp. v. Cloud,* 73 S.W.3d 380, 388 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (stating that the mere creation and mainte-

nance of an internet website does not support a finding of general jurisdiction), *disapproved on other grounds by Michiana Easy Livin' Country, Inc.,* 168 S.W.3d at 788–89; *see also I & JC Corp. v. Helen of Troy, L.P.,* 164 S.W.3d 877, 889 (Tex.App.-El Paso 2005, pet. denied) (concluding trial court did not err in finding specific jurisdiction, in part, based on interactive website, on which products could be bought directly); *Experimental Aircraft Assoc.,* 76 S.W.3d at 505–08 (considering interactive website with online purchasing capability as a factor supporting determination of general jurisdiction).

5. We need not and do not reach the Lawyers' third issue, in which they assert that the exercise of personal jurisdiction over them would offend traditional notions of fair play and substantial justice.