**BUFFET PARTNERS, L.P., Appellant**

v.

**SHEFFIELD SQUARE, L.L.C., Appellee.**

No. 05–07–00640–CV.

Court of Appeals of Texas, Dallas.

June 19, 2008.

Kenneth B. Chaiken, Jennifer S. Brownell, Chaiken and Chaiken, P.C., Dallas, for Appellant.

John T. Palter, Catherine C. Kays, Riney Palter, PLLC, Dallas, for Appellee.

Before Justices MORRIS, WRIGHT, and MOSELEY.

**OPINION**

Opinion by Justice MORRIS.

This is an appeal from the trial court's order granting Sheffield Square, L.L.C.'s special appearance and motion objecting to the court's jurisdiction. In its sole point of error, Buffet Partners, L.P. contends the trial court erred in concluding it did not have personal jurisdiction over Sheffield Square and dismissing the cause. After reviewing the record, we conclude the trial court correctly determined it had no jurisdiction. We affirm the trial court's order.

I.

This suit was brought by Buffet Partners to enforce performance by Sheffield Square under a contract for the lease of commercial real property in Albuquerque, New Mexico. Buffet Partners is a Texas limited partnership with its principal office in Collin County, Texas. Sheffield Square is an Illinois limited liability company with its principal place of business in Illinois. Both Buffet Partners and Sheffield Square became parties to a lease contract in New Mexico as successors-in-interest to the original tenant and landlord respectively.

On March 2, 2005, Buffet Partners, as tenant under the lease, sent Sheffield Square a rental payment in the amount of $51,324.35. Buffet Partners contends the check was sent in error and constituted an overpayment. According to Buffet Partners, Sheffield Square did not return the payment but, instead, placed the money in a "tenant's reserve" account.

Approximately three months later, Buffet Partners and Sheffield Square signed an amendment to the lease extending the lease term by six months. The amendment states, among other things, that the "tenant's reserve" amount would act as a security deposit "for the faithful performance of covenants and conditions of [the] Lease." The amendment further states that Sheffield Square may apply the security deposit to any default under the lease by Buffet Partners including "damages or deficiency in the reletting of the Premises." The lease term was extended again

by a fifth amendment to the lease signed by the parties October 3, 2005.

After Buffet Partners vacated the leased premises, the property manager conducted a walk-through inspection of the building. Based on this inspection, the property manager sent Buffet Partners an e-mail stating that "the suite was left in the condition agreed upon in the lease and subsequent amendments." The property manager further stated that "the only item remaining [was] the roof inspection." Buffet Partners responded by asking when it could expect to receive a refund of its security deposit.

Ten days later, the property manager sent Buffet Partners a letter stating that, during demolition of the leased space in preparation for a new tenant, a contractor discovered extensive mold in a crawl space under the kitchen. The mold was apparently caused by leaking floor drains, missing grout, and cracks in the concrete slab. In addition, the letter stated that the structural integrity of the kitchen floor had been compromised by many years of water damage. The property manager encouraged Buffet Partners to send a representative and a structural engineer to inspect the area within the next five days before further work on the property was done. The letter stated the mold had been abated but the area under the kitchen was available for examination. Buffet Partners contends it notified Sheffield Square that it was sending a representative to assess the damage claims but that the area under the kitchen was demolished before its representative had an opportunity to conduct an inspection.

On April 12, 2006, Sheffield Square's property manager sent Buffet Partners a letter addressing the reconciliation of the security deposit and rental payments. The letter estimated the cost of repairing the damage to the property was $49,681.90. The letter also stated that Buffet Partners owed over $20,000 in rent, utilities, and taxes. After deducting the security deposit and other credits, the property manager demanded payment of $21,603.75.

Buffet Partners brought this suit in Collin County, Texas seeking a declaratory judgment that it was not responsible for the damages to the leased property. In addition, Buffet Partners asserted claims for breach of contract based on Sheffield Square's failure to return the security deposit, fraud in the representation of the repair costs, and conversion of the security deposit.

Sheffield Square responded by filing a special appearance and motion objecting to the trial court's jurisdiction. The evidence submitted with the motion included an affidavit signed by the managing member of Sheffield Square, Gary D. Goodman. In his affidavit, Goodman stated that Sheffield Square had conducted business only in the states of Illinois and New Mexico and never conducted business in Texas. Goodman further testified Sheffield Square had no offices, employees, servants, or agents in Texas and did not maintain an agent for service of process in Texas. Sheffield Square's brief in support of its motion argued that the court had no jurisdiction over it because the operative facts of the claims asserted did not give rise to the minimum contacts necessary for jurisdiction. Buffet Partners filed a response arguing that specific jurisdiction over Sheffield Square existed because, for each of the claims alleged, Sheffield Square availed itself of the privilege of conducting business or activities in Texas.

After considering the pleadings, evidence, and arguments of counsel, the trial court sustained Sheffield Square's objection to the court's jurisdiction and dismissed the cause. Buffet Partners brings

this appeal challenging the trial court's ruling.

## II.

■ In a single issue, Buffet Partners contends the trial court erred in sustaining Sheffield Square's objection to the court's jurisdiction. It contends Sheffield Square's conduct satisfied the requirements for specific jurisdiction. Buffet Partners further contends the assumption of jurisdiction over Sheffield Square is consistent with the constitutional requirements of due process.

■ Personal jurisdiction may be exercised over a nonresident defendant when (1) the nonresident defendant has purposefully established "minimum contacts" with the forum state and (2) the exercise of jurisdiction comports with fair play and substantial justice. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Under a minimum contacts analysis, a defendant's contacts with a forum state can give rise to either general or specific jurisdiction. *CSR Ltd. v. Link,* 925 S.W.2d 591, 595 (Tex.1996). In this case, Buffet Partners contends only that specific jurisdiction exists over Sheffield Square. Specific jurisdiction is established when a defendant's alleged liability arises from or is related to an activity conducted within the forum. *Id.* There must be a substantial connection between a nonresident defendant's contacts with the forum and the operative facts of the litigation. *See Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 585 (Tex.2007). Furthermore, the contacts relevant to the jurisdictional analysis are those through which the nonresident has purposefully availed itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

Buffet Partners first contends specific jurisdiction over Sheffield Square exists based on the contractual obligations of the lease agreement. According to Buffet Partners, the amendments, which created the security deposit at issue in this case, required Sheffield Square to refund the security deposit to Buffet Partners at its offices in Texas. Buffet Partners contends that because this portion of the lease was to be performed in Texas, Sheffield Square was subject to the jurisdiction of the Texas courts. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042(1) (Vernon 1997) (nonresident does business in state if it contracts with Texas resident and either party is to perform contract in whole or in part in Texas). We disagree.

■ We note that the amendments to the lease agreement do not specify where the security deposit is to be returned. When a contract requires the payment of money but does not specify where payment is to be made, the place of payment is the domicile of the payor. *See Carbonit Houston, Inc. v. Exchange Bank,* 628 S.W.2d 826, 831 (Tex.App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.). This is true regardless of where the payment is finally received. *See id.* The fact that the deposit securing Buffet Partners's tenancy in New Mexico would have ultimately been received by the company at its offices in Texas was merely fortuitous and not conduct directed at the state. Because no part of the contract involved performance or other conduct by Sheffield Square in Texas, performance under the contract does not give rise to specific jurisdiction.

Buffet Partners next contends specific jurisdiction exists because the acts of fraud allegedly committed by Sheffield Square were perpetrated in Texas. The specific acts of fraud alleged by Buffet Partners were the misrepresentation of the costs of repair for the leased property and the

intentional concealment of material facts about the repairs. These alleged misrepresentations were purportedly contained in communications directed to Buffet Partners at its offices in Texas.

■ When examining tort allegations as a basis for specific jurisdiction, we must be careful to focus on the defendant's conduct and its relationship to the forum rather than where the plaintiff relies on the fraud. *See Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 790 (Tex.2005). In this case, the allegedly fraudulent communications concerned the condition and repairs of the property leased by Buffet Partners in New Mexico. The reports on the property's condition and repair estimates were created in New Mexico. The inspections and repairs on which the communications were based were conducted in New Mexico. The allegedly fraudulent communications were directed to Buffet Partners as a tenant that occupied and conducted its business at the premises in New Mexico. The sole connection to Texas was that it was the state in which Buffet Partners received the communications. Again, the fact that Buffet Partners has its main office in Texas is merely fortuitous. None of Sheffield Square's contacts with Texas was purposeful and at no point did the company seek any benefit, advantage, or profit by "availing" itself of the jurisdiction of the state. *See id.* at 785. Accordingly, we conclude there is no specific jurisdiction based on Buffet Partners's fraud claims.

Finally, Buffet Partners contends specific jurisdiction exists based on its claim for conversion. It argues that the trial court may exercise personal jurisdiction over Sheffield Square concerning a dispute that arises over the ownership of tangible personal property where the rights of ownership arise by virtue of the property's transfer in Texas. *See Small v. Small,* 216 S.W.3d 872, 878 (Tex.App.-Beaumont 2007,

pet. denied). Buffet Partners asserts that the conversion of the security deposit at issue in this case occurred in Texas because the funds comprising the security deposit were located in Texas before they were sent to Sheffield Square.

■ To establish a claim for conversion, a plaintiff must show (1) title, (2) right to possession, and (3) a demand for return of the property unless the possessor's acts manifest a clear repudiation of the plaintiff's rights. *See El Paso Prod. Co. v. Valence Operating Co.,* 112 S.W.3d 616, 625 (Tex.App.-Houston [1 st Dist.] 2003, pet. denied). When the party accused of illegally converting the property originally had lawful possession, the cause of action for conversion does not arise until return of the property has been demanded and refused or the party in possession has unequivocally exercised acts of dominion over the property inconsistent with the claims of the owner or the person entitled to possession. *Sharpe v. Roman Catholic Diocese of Dallas,* 97 S.W.3d 791, 796 (Tex. App.-Dallas 2003, pet. denied).

In this case, Sheffield Square had lawful possession of the funds at the time they were received by it and deposited in an account in New Mexico. The conversion of those funds took place, if at all, when Sheffield Square refused Buffet Partners's demand for return of the funds. Accordingly, Sheffield Square's allegedly unlawful exercise of dominion over the funds occurred in New Mexico. The fact that Buffet Partners requested return of the funds to Texas does not, by itself, create a sufficient connection between Sheffield Square and the state to give rise to specific jurisdiction. *See Laykin v. McFall,* 830 S.W.2d 266, 271 (Tex.App.-Amarillo 1992, no writ) (no jurisdiction over California resident who refused to return ring sent to him by owner in Texas).

We conclude that Buffet Partners's claims do not "arise out of or relate to" any activity of Sheffield Square in Texas. The quality and nature of Sheffield Square's actions were such that it did not purposefully direct its activities toward Texas or avail itself of the jurisdiction and it could not have reasonably anticipated being sued in a Texas court. Because we conclude Sheffield Square did not have the minimum contacts necessary to invoke the jurisdiction of the State of Texas, it is unnecessary for us to address Buffet Partners's other arguments. The trial court properly sustained Sheffield Square's objection to the court's jurisdiction. We resolve Buffet Partners's sole point of error against it.

We affirm the trial court's order dismissing this cause for want of jurisdiction.