Reversed
and Remanded and Opinion filed March 2, 2010.

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-01032-CV

___________________

 

Miguel Peredo, Appellant

 

V.

 

M. Holland Company AND
ANTONIO PALAZUELOS, Appellees



 



 

On Appeal from the 234th District Court

Harris County, Texas



Trial Court Cause No. 2007-14857

 



 

 

OPINION

          A
Mexican corporation brought suit in Harris County against a vendor and two of
the vendors’ Texas employees.  The vendor counterclaimed against the Mexican
corporation’s president, who resides in California, and the trial court denied
the nonresident counterdefendant’s special appearance.  Because the evidence does
not support the trial court’s exercise of personal jurisdiction over the
nonresident, we reverse and remand. 

I.  Factual
and Procedural Background

            Since approximately 2005, Grupo Cuadro,
S.A. de C.V. (“Cuadro”), a Mexican corporation that manufactures plastic “shrink
wrap” and other plastic wrapping and storage products, has purchased resin from
M. Holland Company (AHolland@).  As Cuadro asserted in
its pleadings, Holland’s corporate offices are in Illinois, but its international
sales are handled through its Houston office, and the sales to Cuadro were
initiated in Texas.  Cuadro also sent its purchase orders to the Houston
office, and Holland’s invoices to Cuadro were sent from the Houston office.  Holland’s
products were delivered and transferred to Cuadro in Laredo, Texas.  

            According to Cuadro, Holland eventually
began selling Cuadro a more expensive resin that did not perform as well, and
Cuadro’s customers returned the products made from that resin.  On March 9,
2007, Cuadro filed suit in Harris County against Holland and two of Holland’s international
sales representatives, Antonio Palazuelos and John Crowley, each of whom
resides in Texas.  According to Cuadro, the defendants violated the Texas
Deceptive Trade Practices – Consumer Protection Act, tortiously interfered with
actual and prospective contracts and business relations, and committed breach
of contract, common-law fraud, commercial disparagement and defamation, breach
of the duty of good faith and fair dealing, and breaches of the implied
warranties of merchantability and fitness for a particular purpose.  Cuadro
additionally asserted several causes of action under Mexican law.  

            After the case had been pending for more
than sixteen months, Holland filed a third-party petition on July 16, 2008 in
which it asserted claims of fraud and fraudulent inducement against Cuadro’s
president, California resident Miguel Angel Peredo Luna (“Peredo”).  Peredo and
his siblings formerly owned Cuadro, but by the time of Peredo’s deposition,
ownership had been transferred to Peredo’s wife and mother.  According to
Holland, Peredo repeatedly made material, false representations to Holland in
2006 and 2007 about past payments and false promises of future payments.  These
representations were made by Peredo to secure the continuation of sales and
shipping of resin to Quadro in reliance on such statements, to continue to sell
and ship resins to Cuadro.  Holland further alleged that despite these
representations, Cuadro had failed to pay for some of the resin shipped by
Holland in 2006.

            Peredo filed a special appearance which
the trial court denied, and the court stayed further proceedings against Peredo
during the pendency of this interlocutory appeal.

II.  Issue
Presented

            In
the sole issue presented, Peredo challenges the trial court’s denial of his
special appearance. 

III. 
Standard of Review

            The
existence of personal jurisdiction is a question of law.  BMC Software
Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  The plaintiff
bears the initial burden of pleading sufficient allegations to bring a
nonresident within the provisions of the long‑arm statute.  Id. at
793.  The nonresident defendant then bears the burden of proof to negate all
bases of personal jurisdiction asserted by the plaintiff.  Moki Mac River
Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007).  On appeal, we
consider all of the evidence before the trial court on the question of
jurisdiction.  Fish v. Tandy Corp., 948 S.W.2d 886, 891 (Tex. App.CFort Worth 1997, writ denied).  When
a trial court does not issue findings of fact and conclusions of law with its
special appearance ruling, all facts necessary to support the judgment and
supported by the evidence are implied.  BMC Software, 83 S.W.3d at 795. 


IV.  Governing Law

            Because the personal jurisdiction of
Texas courts extends as far as the federal constitutional requirements of due
process will permit, we rely on both state and federal precedent in determining
whether a nonresident defendant has met its burden to negate all bases of
jurisdiction.  Id. (quoting U‑Anchor Adver., Inc. v. Burt,
553 S.W.2d 760, 762 (Tex. 1977)).  State statutory and federal due-process
requirements are satisfied if (a) the nonresident has minimum contacts
with Texas, and (b) our exercise of personal jurisdiction over the
nonresident does not offend “traditional notions of fair play and substantial
justice.”  See Helicopteros Nacionales de Colombia, S.A. v. Hall,
466 U.S. 408, 414, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 (citing Int’l
Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95
(1945)). 

C.        Specific Jurisdiction

            There are two types of personal
jurisdiction: specific and general.  On appeal, Peredo challenges only the
existence of specific jurisdiction and represents that Holland at some point
conceded that general jurisdiction does not exist.  At oral argument, Holland
agreed that only the existence of specific jurisdiction ultimately was argued to
and ruled upon by the trial court.  We therefore address only the question of
whether the record supports the trial court’s exercise of specific
jurisdiction.

            Specific jurisdiction is
dispute-specific, and it attaches when the plaintiff’s cause of action arises
out of or relates to the nonresident defendant’s contacts with the forum
state.  Conner, 944 S.W.2d at 410.  To invoke a state’s specific
jurisdiction, the defendant’s activities must have been “purposefully directed”
to the forum, id., and there must be a substantial connection between
the defendant’s forum contacts and the operative facts of the litigation.  Moki
Mac River Expeditions, 221 S.W.3d at 585.[1]
       

V.  Analysis

A.        Minimum Contacts

            The first due process requirement, that
of sufficient minimum contacts, is satisfied if the nonresident defendant has
“‘purposefully avail[ed] itself of the privilege of conducting activities
within the forum State, thus invoking the benefits and protections of its
laws.’” Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct.
2174, 2183, 85 L. Ed. 2d 528 (1985) (quoting Hanson v. Denckla, 357 U.S.
235, 253, 78 S. Ct. 1228, 1239–40, 2 L. Ed. 2d 1283 (1958)).  The “purposeful
availment” requirement ensures that a nonresident will not be haled into a foreign
jurisdiction based on “‘[t]he unilateral activity of those who claim some
relationship” with the defendant or as the result of “‘random,’ ‘fortuitous,’
or ‘attenuated’ contacts.”  Id., 471 U.S. at 474–75, 105 S. Ct. at 2183
(quoting Hanson, 357 U.S. at 253, 78 S. Ct. at 1239–40); Keeton v.
Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S. Ct. 1473, 1478, 79 L. Ed.
2d 790 (1984). 

            To determine whether the nonresident
defendant has purposefully availed itself of the privileges of conducting
business within the State of Texas, we focus on three factors.  See Michiana
Easy Livin’ Country, Inc. v. Holten, 168 S.W.3d 777, 785 (Tex. 2005). 
First, we consider only each defendant’s own actions.  Id.  Second, the
acts of the defendant must be purposeful, rather than random, isolated, or
fortuitous.  Id.  Third, the “defendant must seek some benefit,
advantage, or profit by ‘availing’ itself of the jurisdiction.”  Id.  We
do not consider any of a defendant’s contacts in isolation, but instead apply
these factors to all of the nonresident defendant’s contacts with Texas.  Schlobohm
v. Schapiro, 784 S.W.2d 355, 359 (Tex. 1990).  “[I]t is not the number, but
rather the quality and nature of the nonresident defendant’s contacts with the
forum state that [are] important.”  Guardian Royal Exch. Assurance, Ltd. v.
English China Clays, P.L.C., 815 S.W.2d 223, 230 n.11 (Tex. 1991).

            1.         Peredo’s Affidavit

            In
support of his special appearance, Peredo presented uncontroverted evidence of
the following facts:

·                
Peredo resides in California.

·                
He has never resided in Texas or maintained
an office, place of business, agent, telephone listing, or bank account here.

·                
Peredo does not own, lease, or
control any real or personal property in Texas.

·                
He has no Texas employees.

·                
He has never paid taxes in Texas.

·                
He does not advertise any business
in Texas or provide any service here.

·                
He does not solicit business in
Texas.

·                
Although he has met with Holland
representatives in Illinois, California, and Mexico, he has never met with
Holland representatives in Texas.  

·                
He is not certain if any Holland
representative was in Texas when the representative telephoned Peredo or received
an email from him.

·                
He is the president of a
California company and is needed in California on a daily basis to run that
business.

 

            Both in the trial court and on appeal, Holland
responded to this evidence as follows:

            In late 2006 and early 2007, because Cuadro
fell grossly behind in its payment, M. Holland, through Antonio Palazuelos and
later, other M. Holland employees, began contacting Miguel Peredo, on almost a
daily basis, to inquire about the status of payments for resins allegedly
forthcoming. . . . . In response to these inquiries, Peredo
promised . . . partial payment had been made and further
payment would be forthcoming.

            Many of these communications, including
Peredo’s false promises, were directed to Texas and Antonio
Palazuelos. . . . .

            As a result of Peredo’s communications with
Antonio Palazuelos and others, M. Holland continued to conduct business with M.
Holland [sic].  Antonio Palazuelos was primarily responsible for maintaining
the business relationship. . . .

            Notwithstanding Peredo’s promises of partial
payment and future payment, payment was not forthcoming when promised, if
ever. . . .

            These communications alone – namely, those
communications directed to Texas and which gave rise to the claims of fraud –
are sufficient to create specific jurisdiction under the purposeful availment
test.[2]

Thus, in
response to Peredo’s evidence demonstrating that he did not establish minimum
contacts with Texas, Holland appears to argue that a Texas resident established
minimum contacts with him.              This construction of Holland’s
jurisdictional theory is borne out by the evidence on which Holland relies.  

            2.         Reply
Emails 

            In
support of its argument, Holland produced copies of several email exchanges, including
ten emails from Peredo to Palazuelos over an eighteen month period.[3] 
Significantly, none of Peredo’s email exchanges with Palazuelos were initiated
by Peredo.  To the contrary, each of Peredo’s emails to Palazuelos is a reply to
an email he received from Palazuelos.[4]  

            Such
evidence is analogous to that presented in Weldon-Francke v. Fisher, 237
S.W.3d 789 (Tex. App.—Houston [14th Dist.] 2007, no pet.).  In that case, a New
Hampshire attorney gave legal advice to Texas residents in New Hampshire and
drafted documents concerning the transfer of their New Hampshire summer home to
a trust.  Id. at 794–95.  The Texas residents and their Texas counsel
later contacted the New Hampshire attorney through correspondence, facsimile,
and telephone with inquiries about the trust, and the attorney responded in
telephone calls and correspondence to the clients and their counsel in Texas.  Id.
at 795.  The clients subsequently sued the New Hampshire attorney in Texas,
and argued that specific jurisdiction was proper because the attorney performed
tortious acts in her calls and letters to Texas.  Id. at 797.  We
rejected that argument, and explained that because the attorney did not engage
in purposeful contacts with Texas by rendering legal services to Texas
residents in New Hampshire, she did not engage in purposeful contacts with
Texas by responding to telephone calls and correspondence from Texas about that
advice.  Id.  

            Here, the evidence on which Holland
relies is even more attenuated than that presented in Weldon Francke. 
Like the attorney in that case, Peredo responded to inquiries from Texas, but
unlike the attorney in Weldon-Francke, the subject of those inquiries
was not his performance of a contract with a Texas resident; rather, the
inquiries concerned payments to be sent to a company in Illinois by a Mexican
corporation pursuant to a contract to which Peredo was not a party.  As we
stated in Weldon-Francke, the allegation that a nonresident committed a
tort in the course of such communications is insufficient to overcome the
nonresident’s lack of purposeful contacts.  Id. (citing Michiana,
168 S.W.3d at 788–92).              

            3.         Calls
to a Mobile Telephone Number

            Holland
also relies on an affidavit by Palazuelos in which he attests that his “email
and mobile phone numbers are both Texas[-]based.”  He further attested as
follows:

4.         In connection with M. Holland’s relationship
with Grupo Cuadro, I frequently received telephone calls and emails from Miguel
Peredo directed to me in Texas.

5.         In the telephone calls and emails I received in
Texas from Miguel Peredo, Mr. Peredo discussed and negotiated resin orders and
pricing.  Also in those telephone calls and emails made and sent by Miguel
Peredo while I was in Texas, Mr. Peredo discussed Grupo Cuadro’s payment terms
with M. Holland; past due invoices with M. Holland; and when Grupo Cuadro would
pay M. Holland for resins Grupo Cuadro had purchased.  Miguel Peredo initiated
many of these communications to me, and I also made phone calls and sent emails
to Miguel Peredo while I was located in Texas.

But as the Texas Supreme Court explained in Michiana,

[C]hanges in technology have made reliance on phone calls
obsolete as proof of purposeful availment.  While the ubiquity of “caller ID”
may allow nonresidents to know a caller’s telephone number, that number no
longer necessarily indicates anything about the caller’s location.  If
jurisdiction can be based on phone conversations “directed at” a forum, how
does a defendant avail itself of any jurisdiction when it can never know where
the other party has forwarded calls or traveled with a mobile phone?

Michiana, 168 S.W.3d at 791.  

            Moreover, we have previously stated that
a nonresident does not establish minimum contacts simply by contracting with a Texas
entity and engaging in numerous communications, by telephone or otherwise, with
people in Texas concerning the contract.  See Alenia Spazio, S.p.A. v. Reid,
130 S.W.3d 201, 213 (Tex. App.CHouston
[14th Dist.] 2003, pet. denied) (contracting with Texas entity and numerous
telephone and facsimile communications with people in Texas relating to alleged
contract do not establish minimum contacts); see also TeleVentures,
Inc. v. Int’l Game Tech., 12 S.W.3d 900, 908–10 (Tex. App.CAustin 2000, pet. denied) (“Minimum
contacts may not be satisfied by merely engaging in communications with a Texas
corporation during performance of a contract.”).  Here, neither of the parties to
the contract is a Texas entity, and Peredo is not even a party to the contract;
thus, his contacts with Texas concerning the contract between Cuadro and
Holland are even less purposeful and more attenuated than those we have
previously held insufficient to satisfy the minimum-contacts requirement.

            4.         Content
of Communications

            Holland
also argues that the content of Peredo’s communications with Palazuelos is
sufficient to support specific jurisdiction.  In support of this argument,
Holland relied in the trial court on Wien Air Alaska, Inc. v. Brandt, in
which the Fifth Circuit wrote, “When the actual content of communications with
a forum gives rise to intentional tort causes of action, this alone constitutes
purposeful availment.”  195 F.3d 208, 213 (5th Cir. 1999).[5] 
But as we have previously stated, the “directed tort” rationale employed in Wien
was rejected by the Texas Supreme Court in Michiana.  Proskauer
Rose LLP v. Pelican Trading, Inc., No. 14-08-00283-CV, 2009 WL 242993, at
*4 (Tex. App.CHouston [14th Dist.] Feb. 3, 2009) (mem. op.).  

            Moreover,
the reasoning of the Wien court is based on facts that are readily
distinguishable from those presented here.  The statement quoted by Holland continues,
“The defendant is purposefully availing himself of ‘the privilege of causing a
consequence’ in Texas.”  Wien, 195 F.3d at 213.  But here, the
substance of Holland’s claim is that the California president of a Mexican
corporation made misrepresentations about when the corporation sent payments to
a supplier in Illinois.  The jurisdictional inquiry does not focus on the state
in which the plaintiff relied on the alleged misrepresentation.  Michiana,
168 S.W.3d at 789B91.  Assuming that Peredo committed the tort alleged, the
consequences occurred in Illinois, where Holland resides[6]
and payment was expected, and not in Texas, where a Holland representative
retrieved his email and spoke on his mobile telephone.  See Buffet Partners,
L.P. v. Sheffield Square, L.L.C., 256 S.W.3d 920, 924 (Tex. App.—Dallas
2008, no pet.) (rejecting specific jurisdiction where “[t]he sole connection to
Texas was that it was the state in which [the plaintiff] received the
communications”).  Not only was it simply fortuitous that a Holland
representative received Peredo’s statements in Texas, but there is no
substantial connection between Peredo, Texas, and Holland’s claims.  See id.;
see also Moki Mac, 221 S.W.3d at 588 (rejecting specific jurisdiction
and distinguishing cases in which the forum contact bore a “direct link” to the
claimed injury); Brocail v. Anderson, 132 S.W.3d 552, 563 (Tex.
App.—Houston [14th Dist.] 2004, pet. denied) (“Any tort occurred in the
exercise of medical judgment in prescribing a course of physical therapy in
Michigan, not from the communication of that prescription [to Texas].”).

            5.         Holland’s
Business Relationship with Cuadro

            Holland
further contends that the trial court could exercise personal jurisdiction over
Peredo because “the broader business relationship between Cuadro and M.
Holland, was based, in large part, on communications occurring in Texas or with
a Texas resident.”  But Cuadro’s relationship with Texas is not necessarily the
same as Peredo’s relationship with Texas, and in our jurisdictional inquiry, we
may consider only purposeful contacts by Peredo in which he sought some
benefit, profit, or advantage by availing himself of Texas jurisdiction.  See
Michiana, 168 S.W.3d at 785.  Because Holland has made no allegations that,
if established, might permit the trial court to impute Cuadro’s contacts to
Peredo,[7]  Cuadro’s
contacts with Texas do not form part of our analysis. 

            In
sum, we conclude that Peredo negated Cuadro’s allegations of purposeful
availment, and the evidence does not support implied findings from which the
trial court could have concluded that the minimum-contacts requirements has
been satisfied.  

B.        Fair Play and Substantial
Justice

            In
light of our conclusion that Peredo negated Cuadro’s allegations of purposeful
availment, we do not reach the second prong of the due process requirements.  See
Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 870
(5th Cir. 2001) (per curiam) (declining to examine the
fair-play-and-substantial-justice prong of the due process requirements after
concluding that the nonresident defendant lacked minimum contacts with Texas); Moki
Mac, 221 S.W.3d at 585–88 (omitting consideration of this due-process
requirement after concluding that there was no substantial connection between
the defendant’s conduct and the operative facts of the litigation).  

VI. 
Conclusion

            Because
the contacts at issue in this case do not constitute “purposeful availment,” we
sustain Peredo’s sole issue on appeal, reverse the trial court’s order denying
Peredo’s special appearance, and remand for severance and dismissal of the
claims against him.

 

 

/s/        John S. Anderson

Justice

 

 

Panel consists of Justices Anderson and Brown.  Former
Justice Guzman not participating.









[1] Operative facts are those having principal
relevance.  See A Dictionary of
Modern Legal Usage, 620 (Bryan A. Garner, 2d ed., 1995).





[2] This language, taken from Holland’s response in the
trial court, is repeated almost verbatim in Holland’s appellate brief. 





[3] Because we consider only the nonresident defendant’s
actions, see Michiana, 168 S.W.3d at 785, we do not consider the emails
cited by Holland that were merely received by Peredo.





[4] Palazuelos had multiple email addresses, and although
at least one email from another Holland employee was sent to Palazuelos at an
email address in which “houston” appeared as part of the domain name, the
emails that Palazuelos sent to Peredo and to which Peredo responded do not
include any geographic identifier in Palazuelos’s email address.  





[5] Holland repeated this argument almost verbatim on
appeal, but without citing authority.





[6] See Moni Pulo Ltd. v. Trutec Oil & Gas, Inc., 130 S.W.3d 170, 175 n.7 (Tex. App.—Houston [14th
Dist.] 2003, pet. denied) (“[a] corporation’s residence is the place where its
corporate affairs are conducted—its principal place of business.” (quoting Ring
Power Sys. v. Int’l De Comercio Y Consultoria, S.A., 39 S.W.3d 355 (Tex.
App.—Houston [14th Dist.] 2001, no pet.), disapproved on other grounds, Michiana,
168 S.W.3d at 791–92 & n.81)).





[7] Cf. Greenfield Energy, Inc. v. Duprey, 252 S.W.3d
721, 730 (reviewing trial court’s rejection of plaintiffs’ theories of agency,
alter ego, and single business enterprise as grounds for imputing corporation’s
contacts to individual).