Affirmed in Part, Reversed in Part, and Remanded, and Majority and
Dissenting Opinions filed July 3, 2008








Affirmed in
Part, Reversed in Part, and Remanded, and Majority and Dissenting Opinions
filed July 3, 2008.

                                                                              

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00270-CV

____________

 

DAN KELLY AND LAURA HOFSTATTER, Appellants

 

V.

 

GENERAL INTERIOR CONSTRUCTION, INC., Appellee

 



 

On Appeal from the 125th
District Court

Harris County, Texas

Trial Court Cause No. 05-46388

 



 

D I S S E N T I N G   O P I N I O N








In this case, corporate officers of an Arizona-based
general contractor appeal the denial of their joint special appearance in a
lawsuit filed against them in their individual capacities by a Texas-based
subcontractor.  The subcontractor seeks to recover damages based on purported
breach-of-contract claims, alleged fraudulent statements, and alleged
violations of Chapter 162 of the Texas Property Code.  In  its live pleading,
the subcontractor did not allege (1) a breach-of-contract claim against the
officers, (2) that the corporate officers committed any act in Texas, or (3)
that the corporate officers were doing business in Texas at any time.  Because
the subcontractor failed to satisfy the fundamental requirement that its
pleading contain sufficient allegations of some basis for the exercise of
personal jurisdiction, the corporate officers satisfied their burden of
negating all bases of personal jurisdiction by presenting undisputed evidence
that they are not Texas residents.  Moreover, as to the Chapter 162 claims,
because the evidence conclusively proves that the corporate officers satisfied
their burden of negating all bases of personal jurisdiction, the evidence is
legally insufficient to support the trial court=s implied findings
to the contrary.  Accordingly, this court should sustain the second and third
issues, reverse the trial court=s order, and order the trial court to
dismiss the subcontractor=s claims against the officers for lack of
personal jurisdiction.  Because it does not, I respectfully dissent.

Factual and Procedural Background

Appellants Dan Kelly and Laura Hofstatter (collectively the
AOfficers@) are the sole
shareholders and officers of Diva Consulting, Inc. (ADiva@), an
Arizona-based general contractor.  Hofstatter is the President of Diva, and
Kelly is the company=s Vice President.  It is undisputed that
both individuals are Arizona residents.  Diva, acting as the general contractor
on a Texas construction project, contracted with subcontractor General Interior
Construction, Inc. (AGeneral@), a Texas
company, for hotel renovations to be performed in Texas.  Diva disputed the
amount allegedly owed and stopped paying General because Diva claims to have
incurred expenses in remedying alleged flaws in General=s work.

After the owner of the property, Meristar Hospitality
Corporation (AMeristar@) sued both Diva
and General, General filed a third-party petition against the Officers,
ostensibly asserting three claims:  (1) breach of contract, (2) violations of
Chapter 162 of the Texas Property Code, and (3) fraud.

In a section of its petition entitled ABreach of
Contract,@ General made the following allegations:








!       Diva breached its contract with General,
causing General to suffer damages in an amount in excess of the minimum
jurisdictional limit of the trial court.  

!       Hofstatter
is President of Diva; Kelly is Vice President of Diva.

!         The Officers are the only
owners of Diva.

Citing
to alleged violations of Chapter 162 of the Texas Property Code, General made
the following allegations:

!         Payments
Meristar made to Diva or the Officers were trust funds to be held for the
benefit of General.

!         Meristar=s payments made to Diva were in
return for work performed in Texas by General.

!         The
Officers were trustees of all payments Meristar made to Diva.

!         General
was the beneficiary of trust funds paid to the Officers.

!         The
Officers acted with intent to defraud by providing affidavits to Meristar
stating that all subcontractors were paid or would be paid when that statement
was untrue.

!       Therefore,
the Officers are liable to General for violating section 162.005(1)(C) of the
Texas Property Code.

Finally, General made the following allegations pertaining
to fraud:

!       The Officers promised that General would be
paid under the contract, but General received only partial payment.

!       The Officers made material misrepresentations
with the intention that General would rely on those misrepresentations.

!       The Officers made such misrepresentations
with the knowledge that the statements were false or with reckless disregard
for the truth.

!       General relied
on the misrepresentations and was damaged as a result.

The Officers filed a joint special appearance contesting
the trial court=s ability to exercise personal
jurisdiction over them as to General=s third-party
claims.  The trial court denied this special appearance, and the Officers have
appealed.[1]








Jurisdictional Analysis

Personal jurisdiction over a nonresident defendant is
constitutional when two conditions are met:  (1) the defendant has established
minimum contacts with the forum state, and (2) the exercise of personal
jurisdiction comports with traditional notions of fair play and substantial
justice.[2] 
For a defendant to have sufficient minimum contacts with the forum, it is
essential that there be some act by which the nonresident defendant Apurposefully
avails@ itself of the
privilege of conducting activities in the forum state, thus invoking the
benefits and protections of its laws.[3] 
Although not determinative, foreseeability is an important consideration in
deciding whether the nonresident defendant purposefully has established minimum
contacts with Texas.[4] 
The concept of foreseeability is implicit in the requirement that there be a
substantial connection between the defendant and Texas arising from the
defendant=s conduct purposefully directed toward Texas.[5] 
A defendant should not be subject to a Texas court=s jurisdiction
based upon random, fortuitous, or attenuated contacts.[6]








For specific jurisdiction to exist as to a particular
claim, the claim must arise from or relate to the defendant=s purposeful
contacts with Texas.[7] 
In conducting a specific‑jurisdiction analysis, the focus is on the relationship
among the defendant, Texas, and the litigation.[8] 
For a nonresident defendant=s contacts with Texas to support an
exercise of specific jurisdiction, there must be a substantial connection
between the defendant=s purposeful contacts with Texas and the
operative facts of the litigation.[9]

Under three issues, the Officers challenge the trial court=s implied findings
of specific jurisdiction.  Other intermediate courts of appeals have performed
the specific-jurisdiction analysis on a claim-by-claim basis.[10] 
The United States Supreme Court, the Texas Supreme Court, and this court have
not yet addressed this issue.  By holding that the trial court=s order should be
affirmed in part and reversed in part following a claim-by-claim
specific-jurisdiction analysis, this court necessarily takes a position on the
issue of whether all claims stand or fall together in a specific-jurisdiction
analysis.  The majority chooses the correct approach C a claim-by-claim
analysis C but nevertheless reaches the wrong result. 

                                          Breach-of-Contract
Claim 








Though General claims to have asserted a breach-of-contract
claim against the Officers, even liberally construing General=s third-party
petition, the pleading does not contain such a claim.  After previously
alleging the existence of a contract between General and Diva, General made the
following allegations in a section of General=s petition
entitled ABreach of Contract@:

DIVA wholly and completely failed to perform its
obligations under the contract, resulting in damages to [General]. [General=s] damages were a natural, probable,
and foreseeable consequence of DIVA=s breach.  DIVA failed to honor the contract by failing to
pay [General] for all services and materials provided.  DIVA=s conduct constitutes a breach of
the contractual obligations and relationship [sic] between the parties, both
written and oral, express and implied.  DIVA=s breach has caused [General] to suffer damages in an
amount in excess of the minimum jurisdictional limits of this Court.

At all relevant times herein, LAURA HOFSTATTER was
President of [Diva] and DAN KELLY was Vice President of [Diva].  They are the
only owners of [Diva].

These
allegations are the only part of General=s pleading that
arguably could constitute an allegation of breach of contract against the
Officers.  However, General never alleged that the Officers entered into a
contract with General, that General performed under such a contract, that the
Officers breached such a contract, or that General has suffered any damages
resulting from the breach of such a contract.  According to the majority
opinion, General alleges in its petition that the Officers exclusively operated
Diva and that the Officers are liable for breach of contract.  See ante
at p.5, n.3.  However, General=s pleading contains neither of these
allegations.  General does allege that the Officers are liable for violation of
section 162.005(1)(C)(2) of the Texas Property Code and that General is suing
the Officers for fraud; however, General does not state that the Officers are
liable for breach of contract. 








In the absence of special exceptions, this court must
construe General=s third-party petition liberally and must
find that the petition contains any claims that reasonably may be inferred from
the specific language used in the petition, even if the petition fails to state
all of the elements of that claim.[11] 
This court, however, cannot use the liberal construction of the petition as a
license to read into the petition a claim that it does not contain.[12]

The elements of a breach-of-contract claim by General against
the Officers would be:  (1) the existence of a valid contract between General
and the Officers,  (2) performance or tendered performance by General under the
contract, (3) breach of the contract by the Officers, and (4) damages sustained
by General as a result of the Officers= breach.[13] 
Even liberally construing General=s third-party
petition, it cannot reasonably be inferred from the pleading=s language that
General has alleged any of these elements.[14] 
Though the petition does contain allegations under the heading ABreach of
Contract,@ the only claim that reasonably can be inferred from
the language of this section is a breach-of-contract claim by General against
Diva.[15] 
Because General failed to allege a breach-of-contract claim against the
Officers, this court need not conduct a specific-jurisdiction analysis
regarding breach of contract.








The majority concludes that General did allege a
breach-of-contract claim against the Officers.  The majority, however,
concludes that the Officers are not subject to personal jurisdiction as to this
purported claim because the Officers were acting in their capacities as agents
of Diva and because they are not parties to General=s subcontract with
Diva.  In reaching its conclusion, the majority relies on Wolf v.
Summer-Wood, L.P., in which the Fifth Court of Appeals held that the trial
court lacked personal jurisdiction over corporate officers as to the contract
claim solely because the Wolf court determined that the officers were
not parties to the contract in question.[16] 
Though the Wolf case supports the majority=s analysis, this
analysis conflicts with prior precedents from this court and the Texas Supreme
Court. 

In conducting a personal-jurisdiction analysis, this court
should review only the claims and the evidence regarding the Texas contacts of
the parties who are objecting to personal jurisdiction; this court should
refrain from conducting a merits-based analysis.  Indeed, at this juncture, the
merits of the claims are not at issue.[17] 
The court=s task in reviewing a special appearance is simply to
identify the claims in question and assess the Texas contacts of the Officers
in light of those claims.








For example, in Cerbone, the specially appearing
defendant asserted that the promissory note he signed in Illinois was executed
only as agent of the corporation for which he served as president and chief
executive officer.[18] 
The plaintiff alleged that the corporate officer had executed the note in his
individual capacity.[19] 
This court declined an invitation to consider the merits and to determine
whether the corporate officer was a party to the contract in his individual
capacity.[20] 
Instead, this court concluded that, presuming the corporate officer was a party
to the contract in his individual capacity, the jurisdictional evidence
conclusively proved that the claims against the corporate officer did not arise
from or relate to the officer=s purposeful contacts with Texas.[21] 
The majority asserts that its analysis does not address the merits of General=s purported
breach-of-contract claim; however, if, as the majority holds, there is no valid
contract between the Officers and General, then any contract claim by General
against the Officers clearly lacks merit.[22] 
Therefore, contrary to precedent, the majority does address the merits.[23]

The majority=s analysis of the
purported breach-of-contract claim is unnecessary because General has not
pleaded a contract claim against the Officers.  In addressing this claim, the
majority creates a conflict with Cerbone and other precedents that
require this court to review the trial court=s
personal-jurisdiction rulings without addressing the merits of the claims in
question.  The better course would be to eliminate this unnecessary analysis
and instead dispose of the issue based on General=s failure to
assert a contract claim against the Officers.

Chapter 162 Claims and Fraud Claims

General=s petition does
not contain sufficient allegations to invoke the exercise of personal
jurisdiction over the Officers.








The record reflects that the Officers were served with
process under Texas Rule of Civil Procedure 108.  Whether a nonresident
defendant is served with process under this rule or under the Texas long-arm
statute, the plaintiff must allege in its petition some basis for personal
jurisdiction, such as the defendant=s conducting of
business in Texas or the defendant=s commission of an
act or acts in Texas.[24] 
If the plaintiff does not make such jurisdictional allegations in the petition,
then the defendant can satisfy his burden of negating all bases of personal
jurisdiction by presenting evidence that the defendant is not a resident of
Texas.[25]

In its third-party petition, General alleges that the
Officers acted with intent to defraud by providing false affidavits to Meristar
and that the Officers violated section 162.005(1)(C) of the Texas Property
Code.  General also asserts that the Officers fraudulently represented that
General would be paid in full under its contract with Diva.  Notably, General
does not allege that any of these acts occurred in Texas.  Moreover, in its
third-party petition, General does not allege that the Officers committed any
act whatsoever in Texas or that they conducted any business whatsoever in
Texas.  Therefore, General=s third-party petition lacks sufficient
allegations to invoke the trial court=s personal
jurisdiction over the Officers, and the Officers, thus, could satisfy their
burden of negating all bases of personal jurisdiction merely by presenting
evidence that they are not residents of Texas.[26] 









In their joint special appearance, the Officers proved that
they are residents of Arizona and not residents of Texas.  General has not
disputed this evidence.  The Officers, thus, satisfied their burden of negating
all bases of personal jurisdiction, and the trial court erred as a matter of
law by denying their joint special appearance.[27]

In
any event, the evidence conclusively negates jurisdiction as to the Chapter
162 claims.








General alleges that the Officers are individually liable
because they allegedly violated Chapter 162 of the Texas Property Code.[28] 
General claims that all payments made by Meristar to Diva or the Officers were
trust funds[29]
and that under Chapter 162, the Officers were trustees of all such payments
because the Officers allegedly are owners and officers of a contractor who
allegedly received trust funds or who allegedly had control or direction of
trust funds.[30] 
General alleges that it is a beneficiary of these alleged trust funds the
Officers received or over which they had control or direction.[31] 
General further alleges that the Officers acted with intent to defraud and are
liable under section 162.005(1)(C) of the Texas Property Code because they
allegedly used, disbursed, or diverted trust funds that were paid in reliance
on an affidavit (furnished by the Officers under section 53.085) that contains false
information relating to the trustee=s payment of
current or past due obligations.[32] 
Under binding precedent, for purposes of the jurisdictional analysis, this
court is to presume without deciding that these allegations are true and then
examine the evidence regarding the relationship between these allegations and
the Officers= respective purposeful contacts with Texas.[33]

To meet their burden to negate all potential bases of
jurisdiction, the Officers filed a verified joint special appearance proving
the following:

!       The Officers are both residents of Arizona.

!       The Officers do not reside in Texas, own
property in Texas, have an office or employees in Texas, or transact business
in Texas in their individual capacities.

!       The Officers are corporate officers and directors
of Arizona-based Diva.

!       Diva is a party to the contract at issue in
the underlying lawsuit, but the Officers are not parties to that contract in
their individual capacities and did not guarantee the contract.

!       Meristar is the owner of the property.

!       Meristar is based in Arizona.

!       The contract between Meristar and Diva was
entered into in Arizona.

!       Diva Aworked with Meristar=s agent in Arizona.@

!       When Meristar paid monies in connection with
work on the property, funds were transferred from one Arizona bank account to
Diva=s Arizona bank account.

!       The funds were held in Diva=s Arizona general operating account
and used to pay expenses and salaries in Arizona.[34] 









The
evidence provided by General in response to the Officers= special
appearance does not conflict with any of these facts.  Therefore, these facts are
undisputed.

          Any
alleged knowledge that the brunt of the alleged damages caused by the alleged
torts would be felt by General in Texas is insufficient to support specific
jurisdiction.[35] 
The proper approach is to analyze the degree of connectedness between the
Officers= Texas contacts
and the operative facts of the Chapter 162 claims to determine whether the
operative facts involve contacts with Texas.[36] 
To find specific jurisdiction over the non-resident Officers, the evidence must
establish a substantial connection between each defendant=s purposeful
contacts with Texas and the operative facts of the Chapter 162 claims.[37] 
In conducting the personal-jurisdiction analysis, only the Officers= purposeful
contacts with Texas are to be considered C not the Texas
contacts of any other parties.[38] 
This court may not consider Diva=s contacts with
Texas.

Nonetheless, in determining that specific jurisdiction
exists as to the Texas Property Code claim, the majority relies on the
following alleged contacts of Diva: 

!       Diva=s regular conducting of business in Texas

!       Diva=s entering into the contract for the project in question

!       Diva=s entering into numerous agreements with Texas
subcontractors, including General








!       Diva=s sending of two checks to General to make payment on Diva=s contract with General  Diva=s and/or General=s performance of the construction
work in Texas

!       Diva=s receipt of
invoices from General. 

Because
there is no pleading or proof of any theory for piercing the corporate veil,
this court should consider only the Officers= purposeful
contacts with Texas and not the contacts of Diva or any other party.[39] 
The majority concludes that, because Chapter 162 provides for personal
liability for corporate officers under certain circumstances, General=s allegation of
liability under Chapter 162 allows this court to consider all of Diva=s contacts with
Texas as if they were the Officers= contacts with
Texas in their individual capacity.  The majority=s analysis
conflicts with this court=s opinion in Cerbone, in which the
court presumed that the corporate officer executed the contract in his individual
capacity, as alleged by the plaintiff; however, the Cerbone court did
not count all the contacts of the corporation with Texas as being contacts of
the corporate officer in his individual capacity.[40]


The operative facts regarding General=s claims under
Chapter 162 are (1) the Officers= submission of
affidavits to Meristar, (2) Meristar=s payment of funds
to Diva or the Officers in reliance on these affidavits, (3) the Officers= alleged receipt
or exercise of control over payments from Meristar, and (4) the Officers= alleged use of
these funds.  However, the undisputed evidence before the trial court shows
that none of these events occurred in Texas.[41]








Under Chapter 162 of the Texas Property Code, corporate
officers are subject to  potential personal liability.  Rather than focus on
the operative facts under which the Officers would be personally liable under
General=s Chapter 162
allegations, the majority focuses on contacts that cannot give rise to
liability under Chapter 162 C evidence that Kelly made three or four
trips to the site of the Texas project (Hofstatter made no such trips), letters
and faxes between the Officers (as representatives of Diva) and representatives
of General in Texas regarding the project, and two checks the Officers sent on
behalf of Diva to General.[42]








The majority relies on Herbert v. Greater Gulf Coast
Enterprises, Inc., a case in which the First Court of Appeals rejected a
writ-of-error challenge to a default judgment awarding a subcontractor recovery
on its Chapter 162 claim against the president of a general contractor.[43] 
The appellant in Herbert asserted that the plaintiff=s petition did not
contain sufficient allegations regarding personal jurisdiction.[44] 
The Herbert court concluded that the subcontractor=s petition
contained a Asufficient allegation of appellant=s purposeful act
or transaction in the State of Texas@ and that A[t]he cause of
action, collection of money owed under the construction contract, clearly arose
out of the transaction.@[45]  In the context
of a review of General=s claims and the personal-jurisdiction
evidence in this case, the Herbert case is not on point because it
involves only the sufficiency of the allegations in the plaintiff=s petition.[46] 
However, even equating, as the majority does, the allegations in Herbert
with jurisdictional proof, the Herbert court found that the following
was sufficient to allow the trial court to exercise personal jurisdiction:

!       The nonresident general contractor accepted,
benefitted from, and promised to pay for labor and materials from a Texas
subcontractor on a Texas construction project.

!       Although requested to do so, the nonresident
general contractor refused to pay the subcontractor as it had agreed.

!       Under Chapter 162 of the Texas Property Code,
the nonresident general contractor and its president Paul Herbert were trustees
for construction draws, as to which the plaintiff subcontractor was the
beneficiary; and these defendants diverted and disposed of these draws.[47]








Even presuming that our record contained evidence of all of
the above facts, under the current legal standard for special appearances in
Texas, this evidence would not be sufficient to prove a substantial connection
between a nonresident officer=s purposeful contacts with Texas and the
operative facts of the Chapter 162 claims.[48] 
The Herbert court used as its legal standard for personal jurisdiction
the three-pronged test enunciated in O=Brien v. Lanpar Co.[49] 
In 1984, the United States Supreme Court began using the concepts of specific
jurisdiction and general jurisdiction in the legal standard for analyzing
personal jurisdiction.[50] 
The Texas Supreme Court then tried to incorporate these two concepts into its
personal-jurisdiction analysis without discarding the three-pronged O=Brien test.[51] 
Finally, in 1991, the Texas Supreme Court discarded the O=Brien test in favor of a
legal standard focusing on the two prongs from International Shoe Co. v.
Washington, and the definitions of specific jurisdiction and general
jurisdiction from Helicopteros.[52] 
When Herbert was decided, there were courts of appeals decisions holding
that if a nonresident tortfeasor knows that the brunt of the injury will be
felt by a particular resident in the forum state, he reasonably must anticipate
being haled into court there to answer for his actions.[53] 
However, in 2005, the Texas Supreme Court rejected this line of cases, because,
among other things, the analysis used in this line of cases did not call for
courts to focus sufficiently on the actions of the nonresident defendant.[54]








The Herbert court relied on the language from the O=Brien test indicating
that the connection between the defendant and Texas was sufficient if the
plaintiff=s claim arose out of a transaction by the nonresident
defendant in Texas.[55] 
However, under the current legal standard, the plaintiff=s claim must arise
from or relate to the defendant=s purposeful contacts with Texas.[56] 
In addition, the Texas Supreme Court has emphasized the necessity for a
substantial connection between the defendant=s purposeful
contacts with Texas and the operative facts of the litigation.[57] 
Although the Herbert court did not mention the Abrunt of the
injury@ analysis, its
conclusion seems implicitly based on this approach because there was no
allegation that Herbert had committed any act in Texas but there was an
allegation that he had misappropriated trust funds for a Texas construction
project.[58] 
Therefore, the Herbert court appears to have concluded that Herbert=s alleged
out-of-state misappropriation of alleged trust funds for a Texas construction
project was sufficient because Herbert reasonably should have anticipated being
haled into court, given that he was aware that the brunt of the injury would be
felt by the subcontractor in Texas.[59] 
The Texas Supreme Court, however, has since rejected this analysis.[60] 
Given the significant difference between the legal standard applied in Herbert
and the legal standard that applies to a personal-jurisdiction analysis today, Herbert
is not on point.[61]


The majority also cites various cases regarding liability
under Chapter 162.[62] 
Because the merits of General=s claims are not
at issue in determining the trial court=s ability to
exercise personal jurisdiction consistent with the federal due process
guarantees, these cases are not on point.[63]








The undisputed evidence shows that there is no substantial
connection between the Officers= purposeful contacts with Texas and the
operative facts of the Chapter 162 claims.[64] 
Based upon the undisputed facts, the evidence is legally insufficient to
support the trial court=s implied finding that the Officers
established sufficient minimum contacts with Texas to support the trial court=s exercise of
personal jurisdiction over the Officers as to the Chapter 162 claims.[65]

Conclusion

General did not allege a breach-of-contract claim against
the Officers, nor did General carry its burden of alleging in its petition some
basis for personal jurisdiction over them.  The Officers satisfied their burden
of negating all bases of personal jurisdiction by proving that they are
residents of Arizona and not residents of Texas.  Therefore, the trial court
erred as a matter of law by denying the Officers= joint special
appearance, and this court should reverse the trial court=s order and remand
to the trial court with instructions to dismiss General=s claims for lack
of personal jurisdiction.

 

 

/s/      Kem Thompson Frost       

Justice

 

Judgment rendered
and Majority and Dissenting Opinions filed July 3, 2008.

Panel consists of
Chief Justice Hedges and Justices Anderson and Frost (Hedges, C.J., majority).









[1]  Whether a trial court may exercise personal
jurisdiction over the nonresident officers is a question of law for de novo
review.  See BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d
789, 794 (Tex. 2002).  The trial court did not issue any findings of fact or
conclusions of law.  Therefore, all facts necessary to support the trial court=s ruling that are supported by the evidence are
implied in favor of the trial court=s
decision.  Id. at 795.  Parties may challenge on appeal the legal and
factual sufficiency of these implied factual findings.  Id.  In
conducting a no‑evidence analysis, this court is to review the evidence
in the light most favorable to the challenged finding and indulge every
reasonable inference that would support it.  See City of Keller v. Wilson,
168 S.W.3d 802, 822 (Tex. 2005).  This court must credit favorable evidence if
a reasonable factfinder could and disregard contrary evidence unless a
reasonable factfinder could not.  See id. at 827.  This court
must determine whether the evidence at trial would enable reasonable and fair‑minded
people to find the facts at issue.  See id.  The factfinder is the sole
judge of the credibility of the witnesses and the weight of their testimony.  See
id. at 819.





[2]  See BMC Software, 83 S.W.3d at 795.  





[3]  Michiana Easy Livin= Country, Inc. v. Holten, 168 S.W.3d 777, 784 (Tex. 2005). 





[4]  BMC Software, 83 S.W.3d at 795.





[5]  See Guardian Royal Exch. Assur., Ltd. v. English
China Clays, P.L.C., 815 S.W.2d 223, 227 (Tex. 1991).  





[6]  BMC Software, 83 S.W.3d at 795.





[7]  Am. Type Culture Collection Inc. v. Coleman,
83 S.W.3d 801, 806B07 (Tex. 2002). 





[8]  See Guardian Royal, 815 S.W.2d at 228. 





[9]  See Moki Mac River Expeditions v. Drugg, 221
S.W.3d 569, 585 (Tex. 2007).





[10]  See Seiferth v. Helicopteros Atuneros, Inc.,
472 F.3d 266, 274B75 (5th Cir. 2006) (analyzing specific jurisdiction on
a claim-by-claim basis because the Due Process Clause precludes a court from
exercising specific jurisdiction as to a claim that does not arise from or
relate to the defendant=s forum contacts based on the court=s legitimate exercise of specific jurisdiction over a
defendant as to another claim); Barnhill v. Automated Shrimp Corp., 222
S.W.3d 756, 767 (Tex. App.CWaco 2007, no
pet.). 





[11]  See San Saba Energy, L.P. v. Crawford, 171
S.W.3d 323, 336B37 (Tex. App.CHouston
[14th Dist.] 2005, no pet.). 





[12]  See id.





[13]  See Aguiar v. Segal, 167 S.W.3d 443, 450 (Tex. App.CHouston [14th Dist.] 2005, pet. denied).





[14]  See San Saba Energy, L.P., 171 S.W.3d at 336B37.





[15]  See id.





[16]  214 S.W.3d 783, 792 (Tex. App.CDallas 2007, no pet.).  





[17]  See, e.g., Michiana Easy Livin= Country, Inc.,
168 S.W.3d at 791; Weldon-Francke v. Fisher, 237 S.W.3d 789, 792 (Tex. App.CHouston [14th Dist.] 2007, no pet.).





[18]  See Cerbone, 225 S.W.3d at 766B68 & n.1. 





[19]  See id. 





[20]  See id. at 769B70.  





[21]  See id. at 768B71. 





[22]  See Aguiar,
167 S.W.3d at 450. 





[23]  See PHC-Minden, L.P. v. Kimberly-Clark Corp., 235 S.W.3d 163, 174 (Tex. 2007)
(citing with approval cases holding that courts should not determine merits of
claims in determining whether personal jurisdiction may be exercised over the
claims); Michiana Easy Livin= Country, Inc., 168 S.W.3d at 791 (stressing that courts
must not equate liability with personal jurisdiction because it would be
improper if a party=s liability established personal
jurisdiction and a party=s nonliability negated personal
jurisdiction); Weldon-Francke, 237 S.W.3d at 792 (stating that Athe merits of the [plaintiffs=] claims are not at issue in
determining whether the trial court erred in concluding that it could exercise
personal jurisdiction over [the defendants]@); Cerbone v. Farb, 225 S.W.3d 764, 769B77 (Tex. App.BHouston [14th Dist.] 2007, no pet.)
(presuming, for purpose of personal-jurisdiction analysis, that nonresident
corporate officer signed promissory note in individual capacity, as alleged by
plaintiff, rather than addressing whether, as alleged by officer, he signed
note solely on behalf of the corporation).  





[24]  See Tex.
Civ. Prac. & Rem. Code Ann. ''
17.041B.045 (Vernon Supp. 2005); Tex. R. Civ. P. 108; Moki Mac River Expeditions, 221
S.W.3d at 574 (stating that plaintiff who serves nonresident defendant under
the Texas long-arm statute bears the initial burden of pleading in its petition
sufficient allegations to invoke personal jurisdiction); Paramount Pipe
& Supply Co., Inc. v. Muhr, 749 S.W.2d 491, 495B96 (Tex. 1988) (holding that, even if plaintiff serves a
nonresident defendant under Rule 108, rather than the Texas long-arm statute,
the plaintiff still bears the initial
burden of pleading in its petition sufficient allegations to invoke personal
jurisdiction, such as the defendant=s
conducting business in Texas and committing purposeful acts in Texas); Boston Medical Group, Inc. v.
Ellis, No. 14-06-00801-CV, 2007 WL 2447360, at *3 (Tex. App.CHouston [14th Dist.] Aug. 30, 2007,
no pet.) (noting that there is a minimal requirement that pleadings support
personal jurisdiction over nonresident defendants by alleging that they did
business in Texas or committed acts in Texas) (mem. op.).





[25]  See Perna v. Hogan, 162 S.W.3d 648, 653 (Tex.
App.CHouston [14th Dist.] 2005, no pet.).  





[26]  See id.  





[27]  See id. (holding that trial court erred in
denying special appearances because plaintiffs= petition did not contain sufficient allegations invoking personal
jurisdiction over the
nonresidents and because the nonresidents presented undisputed evidence that
they are not residents of Texas).





[28]  See Tex.
Prop. Code Ann. '' 162.001B.033
(Vernon 2007).  





[29]  See id. '
162.002. 





[30]  See id.





[31]  See id. '
162.003.  





[32]  See id. '
162.005(1). 





[33]  See Michiana Easy Livin= Country, Inc., 168 S.W.3d at 791; Weldon-Francke, 237 S.W.3d at 792.





[34]  The Officers also attached documents to their joint
special appearance that purportedly show (1) the funds from Meristar were used
to pay for business-related expenses for the Texas hotel renovation and (2)
Diva=s calculations of the expenses incurred in remedying
flaws in General=s work as evidence that General owes Diva money
instead of Diva owing General.  Although these documents might relate to
affirmative defenses under section 162.031(b), this court is to presume that
General=s claims have merit for the purposes of our
jurisdictional analysis.  See Tex.
Prop. Code Ann. ' 162.031(b) (Vernon 2007); Michiana Easy Livin= Country, Inc., 168 S.W.3d at 791; Weldon-Francke, 237 S.W.3d at 792.  These documents do not provide any
evidence regarding the Officers= purposeful contacts with Texas or lack thereof. 





[35]  See Tex.
Prop. Code Ann. '' 162.002,
162.031(a); Michiana Easy Livin= Country, Inc., 168 S.W.3d at
788B92 (overruling court of appeals cases applying the Abrunt of the injury@
specific-jurisdiction analysis); Markette v. X-Ray X-Press Corp., 240
S.W.3d 464, 469 n.4 (Tex. App.CHouston [14th
Dist.] 2007, no pet.) (holding that Supreme Court of Texas has overruled court
of appeals cases applying the Abrunt of the
injury@ specific-jurisdiction analysis).  





[36]  See Moki Mac River Expeditions, 221
S.W.3d at 584B85.  





[37]  See id. at 585.





[38]  See id. at 575 (stating that, in
analyzing personal jurisdiction, the only contacts that are relevant are the
purposeful contacts with Texas of the parties challenging the trial court=s personal jurisdiction and that the contacts of all
other parties are not relevant). 





[39]   See Commonwealth Gen. Corp. v. York, 177
S.W.3d 923, 925 (Tex. 2005) (holding, in personal-jurisdiction analysis, that
contacts of corporation could not be considered as contacts of sole shareholder
unless there was evidence that would support a finding that shareholder and
corporation were alter egos, in which case the corporation would be viewed as
the same legal person as the shareholder); Michiana Easy Livin= Country, Inc., 168 S.W.3d at 785 (stressing that personal-jurisdiction analysis
considers only the purposeful Texas contacts of the defendant challenging
personal jurisdiction). 





[40]  See Cerbone, 225 S.W.3d at 768B71. 





[41]  Indeed, the evidence submitted by General indicates
that the affidavits were sent to Meristar in Virginia and that Meristar sent
checks drawn on a Virginia bank account to Diva in Arizona. 





[42]  See York, 177 S.W.3d at 925 (holding court of
appeals erred in finding specific jurisdiction because, even though shareholder
had contacts with Texas, the claims against shareholder did not have a
sufficient connection with these contacts).   





[43]  See 915 S.W.2d 866, 870B71 (Tex. App.BHouston
[1st Dist.] 1995, writ denied). 





[44]  See id. 





[45]  Id.





[46]  See id. 





[47]  See id. at 869B71.





[48]  Compare id. at 870B71, with Moki Mac River Expeditions, 221 S.W.3d
at 584B85. 





[49]  See Herbert, 915 S.W.2d at 870
(applying the O=Brien test
and citing Siskind v. Villa Foundation for Educ., 642 S.W.2d 434, 436
(Tex. 1982)); O=Brien v. Lanpar Co., 399 S.W.2d 340, 342 (Tex. 1966).  





[50]  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466
U.S. 408, 414B15, 104 S. Ct. 1868, 1872, 80 L.
Ed. 2d 404 (1984).  





[51]  See Schlobohm v. Schapiro, 784 S.W.2d 355,
358 (Tex. 1990); Zac Smith & Co. v. Otis Elevator Co., 734 S.W.2d
662, 663B64 (Tex. 1987).  





[52]  See Guardian Royal Exch. Assur., Ltd. v.
English China Clays, P.L.C., 815 S.W.2d 223, 226B28 (Tex. 1991); see also Helicopteros Nacionales de
Colombia, S.A., 466 U.S. at 414B15,
104 S. Ct. at 1872; International Shoe Co. v. Washington, 326 U.S. 310,
316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945).





[53]  See, e.g., Mem=l Hosp. Sys. v. Fisher Ins. Agency, Inc., 835 S.W.2d 645, 650 (Tex. App.CHouston [14th Dist.] 1992, no writ).





[54]  See Michiana Easy Livin= Country, Inc., 168 S.W.3d at 788B92 (overruling court of appeals cases applying the Abrunt of the injury@
specific-jurisdiction analysis);  Cerbone, 225 S.W.3d at 772
(concluding that, under Michiana, personal jurisdiction cannot be based
on allegations that out-of-state tortfeasors knew that the torts they were
committing outside of Texas would cause damages in Texas).





[55]  See Herbert, 915 S.W.2d at 870B71.





[56]  Am. Type Culture Collection Inc., 83 S.W.3d
at 806B07.





[57]  See Moki Mac River Expeditions, 221 S.W.3d at
585. 





[58]  See Herbert, 915 S.W.2d at 870B71.  





[59]  See id. 





[60]  See Michiana Easy Livin= Country, Inc., 168 S.W.3d at 788B92. 





[61]  Compare Herbert, 915 S.W.2d at 870B71, with Moki Mac River Expeditions, 221 S.W.3d at 575B85.






[62]  See C&G, Inc. v. C.N. Jones, 165 S.W.3d
450, 453B54 (Tex. App.CDallas
2005, pet. denied); Perry & Perry Builders v. Galvan, No.
03-02-00091-CV, 2003 WL 21705248, at *4 (Tex. App.CAustin July 24, 2003, pet. denied) (mem. op.); Lively
v. Carpet Servs., Inc., 904 S.W.2d 868, 873 (Tex. App.CHouston [1st Dist.] 1995, writ denied).  





[63]  See PHC-Minden, L.P., 235 S.W.3d at 174; Michiana Easy Livin= Country, Inc., 168 S.W.3d at 791; Cerbone,
225 S.W.3d at 770 (concluding that liability cases are not on point in
reviewing trial court=s personal-jurisdiction ruling).  The majority also emphasizes that, by enacting
Chapter 162, the Texas Legislature expressed a policy of protecting
subcontractors, materialmen, and other Chapter 162 beneficiaries; however, the
Texas Supreme Court has pointed out that statutory policies and liability
choices do not override the requirement of the United States Constitution that
a nonresident defendant have sufficient minimum contacts with the forum state
to justify the exercise of personal jurisdiction.  See PHC-Minden, L.P.,
235 S.W.3d at 174.





[64]  See Moki Mac River Expeditions, 221 S.W.3d at
585B88 (concluding that there was no specific jurisdiction
based on the lack of a substantial connection between the defendant=s purposeful contacts with Texas and the operative
facts of the litigation).  





[65]  Because this court should reverse based on the first
prong of the jurisdictional test, there is no need to determine whether the
exercise of personal jurisdiction comports with traditional notions of fair
play and substantial justice.