Martha Hill Jamison, Justice
In two issues in this interlocutory appeal involving breach of contract and fraud claims, appellants Jutalia Recycling, Inc. and Guy Cardinale challenge the trial *93 court's denial of their special appearance, contending that they did not consent to jurisdiction in Texas and they lack sufficient minimum contacts such that they would reasonably anticipate being haled into a Texas court.[1] Concluding that the trial court lacks jurisdiction, we reverse the order denying appellants' special appearance and render judgment dismissing appellee CNA Metals Limited's claims against appellants.
Background
CNA is a company that imports and exports scrap metal, among other things. A trader for CNA, David Levin, was contacted by Robin Chen, a representative of a company called Foshan Trading, Inc., about the sale of scrap materials. CNA sent Foshan Trading a "Purchase Contract" for a shipment of scrap materials. The Purchase Contract includes the following language in capital letters, "Please note this agreement includes terms & conditions on a separate page attached. All disputes are subject to Fort Bend County State of Texas Jurisdiction." The "terms and conditions" state that the seller "acknowledges, consents, and irrevocably submits to Texas jurisdiction for any Controversy" and "[t]he parties agree that all Controversies shall be brought only in the State courts of Fort Bend County, Texas...."
An "Agreement of Sale" was then sent to CNA from "Fushun Trading/Jutalia Recycling Inc." on the same day. Levin signed the Agreement of Sale with the notation under his signature "Accepted By Buyer." There is another signature that is illegible with the notation under it "Accepted By Seller." The agreement includes the following language:
In case of dispute, the parties herein irrevocable [sic] consent to the jurisdiction of the state and federal courts having jurisdiction over Richmond County, New York, USA. Venue shall be Richmond County, New York, USA. Unless specified otherwise, terms as per United Commercial Code between Buyer and Seller as merchants exclusively.... The Sales Order, together with these terms and conditions, constitutes the entire and exclusive agreement between the Buyer and Seller identified in the Sales Order. Seller's acceptance of the Sales Order is conditioned upon Buyer's agreement that any terms different from or in addition to acknowledgement, release, acceptance or other written correspondence, irrespective of the timing, shall not form a part of the Sales Order even if Seller purports to condition its acceptance of the Sales Order on Buyer's agreement to such different or additional terms.
Approximately a month after its first order, CNA sent two more Purchase Contracts to "Foshan Trading/Jultalia [sic] Recycling," which include the same language quoted above as in the initial Purchase Contract. Another Agreement of Sale from Jutalia was sent to CNA, and another document entitled "Sales Order" was also sent from Jutalia to CNA. This Agreement of Sale and the Sales Order both include the same language quoted above as in the initial Agreement of Sale and were both signed by Levin as Buyer and a representative of Jutalia as Seller.[2]
In the meantime, the first order of scrap materials was shipped from New York to *94 China. Team Enterprise, a transportation company, supervised the loading process. When the shipment arrived, CNA had it inspected and alleges that it contained worthless materials. CNA filed this lawsuit in Harris County, Texas, bringing a claim against Jutalia and Foshan for breach of contract and claims against Jutalia, Foshan, Cardinale, and Team Enterprise for fraud and conspiracy to commit fraud.[3] Jutalia and Cardinale filed the special appearance forming the basis of this appeal.
In their special appearance, Jutalia and Cardinale asserted that the trial court lacks jurisdiction because they are not amenable to process in Texas, they do not have contacts with Texas sufficient to warrant the exercise of specific or general jurisdiction, and the trial court's asserting jurisdiction would offend traditional notions of fair play and substantial justice. The trial court denied the special appearance after a hearing, and appellants filed this interlocutory appeal.
Discussion
On appeal, appellants contend that the trial court erred in denying their special appearance because they did not consent to jurisdiction in Texas and lack sufficient minimum contacts with Texas giving rise to jurisdiction over appellants.
Whether a court has personal jurisdiction over a defendant is a question of law we review de novo. Moncrief Oil Int'l Inc. v. OAO Gazprom , 414 S.W.3d 142, 150 (Tex. 2013). When, as here, the trial court does not issue findings of fact or conclusions of law, we imply all facts necessary to support the trial court's ruling that are supported by the evidence. Id.
Personal jurisdiction over nonresident defendants satisfies the constitutional requirements of due process when the defendant has purposefully established minimum contacts with the forum state and the exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice. Id. ; Retamco Operating, Inc. v. Republic Drilling Co. , 278 S.W.3d 333, 337 (Tex. 2009). A defendant establishes minimum contacts with a forum if the defendant has purposely availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. Moncrief , 414 S.W.3d at 150 ; Retamco , 278 S.W.3d at 338. A defendant's minimum contacts may give rise to either specific jurisdiction or general jurisdiction. Moncrief , 414 S.W.3d at 150 ; Retamco , 278 S.W.3d at 338. Here, CNA's asserted basis for jurisdiction is specific jurisdiction.
When specific jurisdiction is asserted, our analysis focuses on the relationship among the defendant, Texas, and the litigation to determine whether the plaintiff's claim arises from Texas contacts. Moncrief , 414 S.W.3d at 150. We analyze minimum contacts for specific jurisdiction on a claim-by-claim basis, unless all claims arise from the same forum contacts. Id. at 150-51. Here, CNA's claims for breach of contract, fraud, and conspiracy to commit fraud are all based on the same purported contacts with Texas.
I. Consent to Jurisdiction Not Binding on Appellants
Below, CNA argued that Jutalia consented to Texas jurisdiction in the Purchase Contracts.[4] In their first issue, appellants argue that Jutalia did not consent to Texas jurisdiction because under the Sales Orders, Jutalia's acceptance of *95 CNA's offer to purchase scrap materials was expressly conditioned on the parties' consent to New York jurisdiction for disputes. CNA argues that Jutalia consented to personal jurisdiction in Texas by "accept[ing]" CNA's Purchase Contracts. CNA further asserts that appellants waived this argument by failing to raise it in the trial court.
It is undisputed that CNA sent each Purchase Contract first and then Jutalia sent the Sales Orders, which were signed by both parties, to CNA. Appellants argue that under the Uniform Commercial Code, the Purchase Contracts constituted offers to purchase goods and Jutalia expressly conditioned its acceptance on the terms in the Sales Orders.
To determine whether Jutalia consented to Texas jurisdiction, we must address whether Jutalia's acceptance of CNA's offers was expressly conditioned on differing terms in the Sales Orders. In their memorandum in support of the special appearance, appellants asserted that the parties consented to jurisdiction in New York:
The sales orders are signed by ... Cardinale for Jutalia and ... Levin, a representative of CNA. The sales order[s] contain[ ] a clause limiting jurisdiction to Richmond County, New York concerning any disputes.... There are no documents signed by Jutalia in which the parties agreed to a forum other than Richmond County, New York.
Under the UCC,
A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
Tex. Bus. & Com. Code § 2.207(a). Section 2.207 speaks to two situations. The first situation is when an offer is made and a written acceptance is sent in return, but the acceptance purports to add additional terms to the contract. Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enters. , 625 S.W.2d 295, 299 (Tex. 1981) (citing Tex. Bus. & Com. Code § 2.207, cmt. 1). The second, inapplicable here, deals with an unwritten agreement that is later confirmed in writing. Id.
A frequent example of the first situation is when, as here, the parties exchange printed purchase orders and acceptance forms. See Tex. Bus. & Com. Code § 2.207, cmt. 1. The terms in the two sets of forms often do not correspond, and often the seller's form contains terms different from or additional to those set forth in the buyer's form. See id. These different or additional terms are viewed as a proposal for added terms "unless the acceptance is made conditional on the acceptance of the additional or different terms. " Id . cmt. 2 (emphasis added).
The Sales Orders state that they "constitute[ ] the entire and exclusive agreement between the Buyer and Seller identified in the Sales Order" and "Seller's acceptance of the Sales Order is conditioned upon Buyer's agreement that any terms different from or in addition to acknowledgement, release, acceptance or other written correspondence, irrespective of the timing, shall not form a part of the Sales Order...." The Purchase Contracts and the Sales Orders contained different terms-as relevant here, the former involving Texas jurisdiction and the latter involving New York jurisdiction. Levin signed the Sales Orders as a representative of CNA, and the goods were not loaded and shipped until after that time.
CNA argues that the Sales Orders were merely "confirming" purchase agreements *96 showing that Jutalia had agreed to the terms of the Purchase Contracts. According to CNA, Jutalia's acceptance only proposes to add additional terms to the contract, and the contracts became a combination of the terms in the buyer's and seller's forms in a so-called "battle of the forms." See id. § 2.207(b). We disagree: in the Sales Orders, Jutalia expressly stated that its acceptance was conditioned on the terms therein. We accordingly conclude that Jutalia did not consent to personal jurisdiction in Texas under the Purchase Contracts. See Hillson Steel Prods., Inc. v. Wirth Ltd. , 538 S.W.2d 162, 166 (Tex. Civ. App.-Houston [1st Dist.] 1976, no writ) ("The plaintiff's counter proposal is clearly 'conditional on assent to the additional or different terms.' The terms ... in the counter proposal materially alter the terms contained in the ... written proposal and cannot, in our opinion, be considered mere suggestions or proposals in furtherance of a pre-existing contract.") (quoting Tex. Bus. & Com. Code § 2.207, cmt. 1).[5] We further conclude that Jutalia did not waive its argument that it did not consent to jurisdiction in Texas because it argued in the special appearance that "[t]here are no documents signed by Jutalia in which the parties agreed to a forum other than Richmond County, New York."
We turn to appellants' argument that the parties' consent to New York jurisdiction precludes the Texas court from asserting jurisdiction over Jutalia. Presuming for arguments' sake that appellants raised this issue below,[6] we agree with CNA that the issue lacks merit. A consent to jurisdiction or forum selection clause does not foreclose the possibility that a defendant had minimum contacts elsewhere. Nawracaj v. Genesys Software Sys., Inc. , 524 S.W.3d 746, 756 (Tex. App.-Houston [14th Dist.] 2017, no pet.) (citing Michiana Easy Livin' Country, Inc. v. Holten , 168 S.W.3d 777, 792 (Tex. 2005) ). Such clauses generally operate as a consent to jurisdiction in one forum but do not establish that "the Constitution would allow no other." Id. at 756-67 (quoting Michiana , 168 S.W.3d at 792 ). Accordingly, the parties' consent to New York jurisdiction does not preclude the trial court's exercise of jurisdiction in Texas. See id. at 757.
Concluding that Jutalia did not consent to jurisdiction in Texas but the parties' consent to New York jurisdiction does not preclude the Texas court from asserting jurisdiction over Jutalia, we sustain appellants' first issue in part and overrule it in part. We turn to whether appellants had sufficient minimum contacts with Texas to give the trial court jurisdiction over appellants.
II. Minimum Contacts Not Sufficient to Confer Jurisdiction
In their second issue, appellants argue that they have not established minimum contacts with Texas by purposely availing themselves of the privilege of conducting activities there. CNA asserts that Chen and Foshan, as Jutalia's agents, established sufficient minimum contacts with Texas giving rise to Texas jurisdiction over *97 Jutalia and Cardinale.[7] We need not determine whether Chen and Foshan were Jutalia's agents because we conclude even if they were, they do not have sufficient minimum contacts with Texas to confer jurisdiction on the trial court.
To assess whether a nonresident defendant has purposely availed itself of the privilege of conducting activities in Texas, we consider three factors. Moncrief , 414 S.W.3d at 151 ; Retamco , 278 S.W.3d at 338. First, only the defendant's own actions are relevant, not the unilateral activities of another party or a third party. Moncrief , 414 S.W.3d at 151 ; Retamco , 278 S.W.3d at 339. Second, a showing of random, isolated, or fortuitous contacts is insufficient. Moncrief , 414 S.W.3d at 151 ; Retamco , 278 S.W.3d at 339. Third, a defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. Moncrief , 414 S.W.3d at 151 ; Retamco , 278 S.W.3d at 339. We assess the quality and nature of the contacts, not the quantity. Moncrief , 414 S.W.3d at 151 ; Retamco , 278 S.W.3d at 339. At its core, the purposeful availment analysis seeks to determine whether a nonresident's conduct and connection to a forum are such that it could reasonably anticipate being haled into court there. Moncrief , 414 S.W.3d at 152.
CNA contends the following actions were contacts with Texas that justify the trial court's exercise of jurisdiction over Jutalia and Cardinale:
• Contacting CNA's salesperson in Texas via telephone regarding the sale of scrap metal materials to CNA and communicating with CNA via telephone calls and emails;
• Entering into three contracts with CNA;
• Soliciting CNA to wire payment to Jutalia's bank in New York; and
• Agreeing to CNA's Purchase Contracts containing jurisdictional clauses.
We have already disposed of CNA's argument that Jutalia agreed to the terms of CNA's Purchase Contracts. Because the Sales Orders constitute the entire agreement of the parties, CNA's argument that Jutalia agreed to the jurisdictional clauses in the Purchase Contracts is without merit. We turn to the other purported contacts with Texas.
Contacting CNA's Salesperson in Texas and Other Communications . Issues of "who initiated contact" and the frequency of solicitations are important for determining whether the defendant purposefully availed itself of the forum in a buy-sell case. Peters v. Top Gun Exec. Grp. , 396 S.W.3d 57, 69 (Tex. App.-Houston [14th Dist.] 2013, no pet.). However, a nonresident's initiating phone calls from the nonresident's state directed to Texas, standing alone, does not satisfy the minimum contacts requirement. Evergreen Media Holdings, LLC v. FilmEngine Entm't, LLC , No. 09-14-00364-CV, 2016 WL 5399760, at *5 (Tex. App.-Beaumont Sept. 22, 2016, no pet.) (mem. op.); see also Searcy v. Parex Res., Inc. , 496 S.W.3d 58, 62 (Tex. 2016) (holding Canadian entity's attempt to purchase shares of a Bermudian entity by contacting shareholders in Texas did not give rise to jurisdiction in Texas "even considering the extent of the communications"). Specific jurisdiction does not turn on where a plaintiff happens to be. Searcy , 496 S.W.3d at 70. The defendant's contacts with the forum state must be substantially connected to the alleged operative facts of the case. Id. The seller *98 must intentionally target the Texas market. Moki Mac River Expeditions v. Drugg , 221 S.W.3d 569, 577 (Tex. 2007) ; TV Azteca v. Ruiz , 490 S.W.3d 29, 47 (Tex. 2016).
Here, although CNA was contacted via telephone about purchasing scrap metal materials and the parties communicated via telephone and emails, the materials were neither located in Texas nor shipped to Texas. Cf. TV Azteca , 490 S.W.3d at 46 (" '[A] nonresident who places products into the 'stream of commerce' with the expectation that they will be sold in the forum state' may be subject to personal jurisdiction in the forum.") (quoting Moki Mac , 221 S.W.3d at 576-77 ).[8] CNA was contacted solely by telephone and email regarding purchases of non-Texas assets requiring no continuing relationship with Texas. See Parex Res., Inc. v. ERG Res., LLC , 427 S.W.3d 407, 429 (Tex. App.-Houston [14th Dist.] 2014), aff'd sub nom., Searcy , 496 S.W.3d 58. The fact that a CNA salesperson was contacted in Texas regarding products in New York to be shipped to China was fortuitous and attenuated. See ids="6773059" index="40" url="https://cite.case.law/sw3d/496/58/#p62">id. CNA has not shown these contacts were for the purpose of obtaining some benefit, advantage, or profit from the Texas market based on appellants' communications with CNA. See ids="6773059" index="41" url="https://cite.case.law/sw3d/496/58/#p62">id. ; see also Peredo v. M. Holland Co. , 310 S.W.3d 468, 474-75 (Tex. App.-Houston [14th Dist.] 2010, no pet.) (stating that a nonresident does not establish minimum contacts with Texas simply by contracting with a Texas resident and engaging in numerous communications, by telephone or otherwise, with persons in Texas concerning the contract).
Contracts with CNA . The mere act of contracting with a Texas resident similarly does not give rise to specific jurisdiction in Texas: performance must be due in Texas. Lisitsa v. Flit , 419 S.W.3d 672, 680 (Tex. App.-Houston [14th Dist.] 2013, pet. denied). The disposition of the jurisdictional question does not turn on the fortuity of where the Texas resident was located when the defendant entered into a contract. See id. ; see also Bryan v. Gordon , 384 S.W.3d 908, 917 (Tex. App.-Houston [14th Dist.] 2012, no pet.). CNA has not alleged any performance of the contracts in Texas by Jutalia and Cardinale. The scrap metal materials were sent to China. The fact that appellants conducted business with CNA, a Texas company, standing alone, simply does not confer specific jurisdiction. See Bryan , 384 S.W.3d at 916 ; Weldon-Francke v. Fisher , 237 S.W.3d 789, 796 (Tex. App.-Houston [14th Dist.] 2007, no pet.) (stating that New Hampshire lawyer's contracting with and accepting payment from Texas resident for services performed in New Hampshire was insufficient to support specific jurisdiction).
Soliciting Payment from Texas . That CNA sent a payment to Jutalia from Texas to New York, even at Jutalia's behest, also does not confer specific jurisdiction over Jutalia and Cardinale. Something other than payments must tie the defendant to the forum. See Weldon-Francke , 237 S.W.3d at 796 ("[A]ccepting payment from Texas residents for services performed in New Hampshire is insufficient to support specific jurisdiction."); cf. Falcon Crest Aviation Supply, Inc. v. Jet Mgmt., LLC , No. 14-11-00789-CV, 2012 WL 4364661, at *4 (Tex. App.-Houston [14th Dist.] Sept. 25, 2012, no pet.) ("As we previously have stated regarding minimum *99 contacts, sending funds to Texas is not determinative."). The fortuity of where CNA was located when it paid Jutalia is irrelevant to our analysis. See Lisitsa , 419 S.W.3d at 680-81 ; see also Moncrief , 414 S.W.3d at 157 (holding defendants' alleged tortious conduct in California against a Texas resident was insufficient to confer specific jurisdiction over defendants as to plaintiff's tortious interference claims); Weldon-Francke , 237 S.W.3d at 796.
CNA relies heavily on this court's opinion in Max Protetch, Inc. v. Herrin , 340 S.W.3d 878 (Tex. App.-Houston [14th Dist.] 2011, no pet.), to support the argument that appellants have sufficient minimum contacts with Texas to confer specific jurisdiction. Max Protetch is distinguishable in two significant aspects: the merchandise at issue in that case, a table, was shipped from the New York seller to Texas to the Texas buyer, and the seller met with the buyer in his home in Texas during which time the seller purportedly misrepresented that the table could be repaired and refinished. Id. at 886. Committing a tort in Texas gives rise to jurisdiction in Texas. See ids="7320700" index="55" url="https://cite.case.law/sw3d/340/878/">id. at 887 ; see also ERC Midstream LLC v. Am. Midstream Partners, LP , 497 S.W.3d 99, 111 (Tex. App.-Houston [14th Dist.] 2016, no pet.) (holding the plaintiffs' "fraud claim [wa]s based in large part on [the defendant's] purported representation at [a] meeting [in Texas], which form[ed] the basis of the operative facts for that claim."). Here, the merchandise was not sent to Texas, and CNA has not alleged that appellants committed a tort in Texas. CNA also relies on Walker Insurance Services v. Bottle Rock Power Corp. , 108 S.W.3d 538 (Tex. App.-Houston [14th Dist.] 2003, no pet.), in support of its argument. That case, similarly, involved meetings in Texas and is distinguishable on that basis.[9] Id. at 553.
Focusing on the quality of appellants' Texas contacts, we conclude the evidence, viewed in the light most favorable to the trial court's ruling, does not support the trial court's finding that appellants' purposely availed themselves of the privilege of conducting activities in Texas. By never meeting in Texas and also signing Sales Orders with New York jurisdictional clauses for the sale of products that were never sent to Texas, it appears that appellants intended to avoid Texas by structuring their transactions in such a way as neither to profit from Texas law nor to subject themselves to jurisdiction there. See Parex Res. , 427 S.W.3d at 431 (citing Moki Mac , 221 S.W.3d at 575 ). Accordingly, the trial court cannot exercise specific jurisdiction over appellants.[10] Concluding that appellants lack sufficient minimum contacts with Texas to confer specific jurisdiction, we sustain their second issue.
Conclusion
Having concluded that the trial court lacks jurisdiction over appellants, we render judgment dismissing CNA's claims *100 against Jutalia and Cardinale for want of jurisdiction.

See Tex. Civ. Prac. & Rem. Code § 51.014(a)(7) (authorizing an interlocutory appeal from the denial of a special appearance).

We refer to the Agreements of Sale and Sales Order collectively as "Sales Orders."

As alleged, Cardinale owns Jutalia.

Cardinale was not a party to either the Purchase Contracts or the Sales Orders.

CNA also argues that appellants have asked this court to enforce a New York jurisdictional clause. We disagree. Appellants argue only that they did not consent to Texas jurisdiction and the parties instead consented to New York jurisdiction.

Below, appellants argued that the Sales Orders include a clause limiting jurisdiction to New York concerning any disputes and Jutalia did not agree to litigate disputes in any other forum, but appellants did not explicitly assert that the trial court lacks jurisdiction because of the parties' consent to New York jurisdiction.

CNA argues that the Texas court also has jurisdiction over Cardinale because he is the president of Jutalia and a signatory to the Sales Orders.

But even when a nonresident places products into the stream of commerce with the expectation they will be sold in the forum state, mere knowledge that the product will be sold there is not enough. TV Azteca , 490 S.W.3d at 46. Additional conduct must demonstrate an intent or purpose to serve the market in the forum state. Id.

We also noted in that case that the defendant's "telephone communications with a Texas resident may be considered in the minimum contacts jurisdictional analysis." Walker Ins. Servs. , 108 S.W.3d at 553-54. However, we have never held that a defendant's contracting and telephone communications and emails with a Texas resident, standing alone, can confer jurisdiction on a Texas court. See Peredo , 310 S.W.3d 468, 474-75 ("[A] nonresident does not establish minimum contacts simply by contracting with a Texas entity and engaging in numerous communications, by telephone or otherwise, with people in Texas.").

CNA has not asserted that the trial court has general jurisdiction over appellants, and we do not address that issue.